UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMY JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 C 7273 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| WHITE CASTLE MANAGEMENT CO., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Jimmy Jenkins brings a complaint against White Castle Management Company ("White Castle") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1, *et seq.*, on behalf of himself and others similarly situated. Jenkins alleges that White Castle improperly reduced his wages and failed to pay him for overtime work. Jenkins also alleges that White Castle retaliated against him for protesting these violations. Jenkins seeks to bring his FLSA claims as a collective action and seeks class-action treatment pursuant to Federal Rule of Civil Procedure 23 for his Illinois state-law claims. Jenkins now moves to compel White Castle to answer his discovery requests. As explained below, the court grants the motion in large part.

**I. BACKGROUND**

The court begins with a summary of Jenkins's allegations. Jenkins was an employee of the Dolton, Illinois White Castle restaurant.[1] He claims that he was not paid for all of the time he worked because he was required to work off the clock at the end of his shift, his overtime was

---

[1] Jenkins's motion to compel indicates that he now works at a different White Castle location.

improperly "rolled" into his subsequent week's hours, and he was required to "repay" White Castle for "drawer shortages." He also claims that he suffered retaliation, including suspension, when he protested these practices.

Jenkins further claims that the Dolton, Illinois White Castle had a practice of requiring its employees to pay for business expenses such as drawer shortages, which reduced the employees' wages to such a degree that they failed to meet Illinois wage law or FLSA requirements. On behalf of a class, Jenkins asserts claims pursuant to the IMWL (Count I), and the IWPCA (Count II), based on the alleged requirement that employees "repay" expenses such as drawer shortages. Jenkins also brings a collective action under the FLSA (Count III) to recover unpaid wages for overtime work, work performed "off the clock," and wages lost due to repayment of drawer shortages. Jenkins asserts additional claims on behalf of the class under the doctrines of quantum meruit (Count IV) and unjust enrichment (Count V). Jenkins states in the complaint that his "[c]laims are limited to the Dolton White Castle location, as it appears that the policy and procedure of repayment is the unwritten policy and procedure of only one manager at this one location." (Compl. ¶ 26.) He alleges that the practice affected all Dolton employees. (*Id.* at ¶ 45.) He estimates that there are "at least 200 persons in the class." (*Id.* at ¶ 30.)

The court scheduled discovery to close on July 31, 2013. (ECF No. 12.) Because the parties expressed an interest in pursuing settlement discussions (which did not prove fruitful), the discovery deadline was extended to August 30, 2013 (ECF No. 25), and then to September 30, 2013 (ECF No. 28). Jenkins filed this motion to compel on September 5, 2013. He argues that in answering his document requests and interrogatories, White Castle limited its responses to information pertaining only to Jenkins himself, refusing to answer requests for documents pertaining to the putative Rule 23 and FLSA opt-in classes of Dolton employees.

## II. LEGAL STANDARD

The federal rules permit liberal discovery in an effort to facilitate the trial or settlement of legal disputes. *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A district court exercises substantial discretion in ruling on a motion to compel, and may fashion a ruling appropriate in light of the circumstances of the case and the arguments of the parties. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th Cir. 1996). The court thus endeavors to strike a balance between protecting a party from unduly burdensome discovery and ensuring that the opposing party has all available documents likely to lead to relevant evidence.

## III. ANALYSIS

### A. General Objections

The court will first address White Castle's broad arguments about the appropriate scope of discovery, then examine Jenkins's actual requests. White Castle argues that Jenkins seeks to embark on "a virtually unlimited fishing expedition" that goes beyond the scope of his complaint. As Judge Schenkier has aptly noted, the "fishing expedition" argument is unhelpful:

> It is part and parcel of the discovery process for parties to make discovery requests without knowing what they will get, or indeed, whether they will get anything at all. In that sense, most discovery involves an element of "fishing." Thus, to conclusorily label a discovery request as a "fishing expedition" does little to advance the discussion; the more appropriate inquiry (to continue with the fishing metaphor) is how big a pond is the requesting party allowed to fish in, and what may the requesting party fish for.

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *6 (N.D. Ill. Sept. 24, 2013). The pond at issue here is White Castle's Dolton location. White Castle argues

3

that because Jenkins's claims are limited to the Dolton location and the conduct of one manager there, Jenkins is not entitled to seek documents that originate outside of the Dolton location.

The scope of a claim, however, is not necessarily identical to the scope of relevant discovery. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues."). Even if Jenkins's allegations are limited to the Dolton facility, there may be managers outside of the Dolton location (area or regional supervisors, for example) with documents relevant to conduct that occurred at the Dolton location. Jenkins is not barred from seeking documents relevant to the alleged conduct at Dolton merely because the issues were discussed by higher-level management or with respect to multiple White Castle locations. He is entitled to responsive documents both from Dolton-level management and from area and regional managers with respect to these topics.

White Castle also argues that no class or collective action has been certified in this case, and that Jenkins is therefore not entitled to records pertaining to other employees at the Dolton restaurant, such as work schedules, personnel files, wage rates, and records of terminations. White Castle does not object specifically to any particular production requests—rather, it makes a blanket argument that it need not provide *any* discovery about other Dolton employees because no class or collective action has been certified.

In this district, FLSA collective actions generally involve a two-step process. The plaintiff must first show that other similarly situated employees are potential claimants. *See, e.g.*, *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). To do so, "the plaintiff must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were

victims of a common policy or plan that violated the law.'" *Russell*, 575 F. Supp. 2d at 933 (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). If the plaintiff can make this showing, the court may conditionally certify a collective action, and the plaintiff may send notice of the suit to similarly situated employees who may choose to opt in as plaintiffs. *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007).

This means that to pursue a collective action, Jenkins needs to show that there are other potential plaintiffs who are similarly situated to him. Because White Castle denies that it had common policies giving rise to his claims, he will need discovery to make this showing. *See Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007) ("Unless defendant admits in its answer or briefs that other similarly situated employees exist, plaintiffs cannot rely on their allegations alone to make the required modest factual showing.").

In the class-action context, meanwhile, courts routinely allow pre-certification discovery for the purposes of defining the class and identifying how many similarly situated employees exist. *See e.g.*, *Chavez v. Hat World*, No. 12 C 5563, 2013 WL 1810137, at *2-3 (N.D. Ill. Apr. 29, 2013) (requiring payroll information to be produced to allow plaintiff to identify whether other potential class members were similarly situated); *Whiteamire Clinic*, 2013 WL 5348377, at *6 (requiring defendant to allow plaintiff to image its hard drives to determine who was sent unsolicited facsimile advertisements in a Telephone Consumer Protection Act case).

In sum, given the burden a plaintiff bears to define the class and identify a policy or policies common to the class pursuant to both Rule 23 and the FLSA, Jenkins will need discovery to pursue his class and collective action claims. White Castle may not contest class and/or collective action certification while denying Jenkins discovery relevant to whether a class or collective action should be certified.

**B. Discovery Requests**

The court now turns to Jenkins's specific requests. It notes that White Castle's opposition to the motion to compel includes less than two pages addressing the actual discovery requests and does not include specific objections to particular requests. White Castle instead relies entirely on the blanket arguments summarized above.

Jenkins asks the court to compel White Castle to produce the following discovery regarding communications by White Castle management:

1. All communications from White Castle agents discussing drawer shortages, "rolling" of time, overtime, and off-the-clock work. (Document Request 4)

2. Any and all notes, e-mails, memorandums or any other writing prepared by the Defendant and sent to its various locations that concern, touch on and/or directly discuss the Plaintiff's claims or Defendant's defenses. (Document Request 16)

3. All communications from any employee questioning, disputing, objecting or otherwise protesting the payments for drawer shortages, for all Illinois locations. (Document Request 36)

The motion to compel is granted as to the communications by employees or management discussing drawer shortages, "rolling" of time, overtime, and off-the-clock work. For the reasons discussed above, these documents are relevant to Jenkins's claims, regardless of whether they were prepared specifically in response to events at the Dolton location. The motion to compel "any and all" communications that discuss Jenkins's claims or White Castle's defenses, however, is vague and overbroad. The motion is therefore denied as to that request.

Jenkins also seeks the following discovery related to employees at the Dolton White Castle location:

1. All documents showing the name, job title, and wage rates of employees who work or worked at the Dolton location. (Document Requests 6, 32)

6

2.  Lists of current and former employees by name, address, phone number, and email address, dating back five years prior to the filing of the complaint. (Document Requests 9, 10; Interrogatory 6)

3.  All documents which reflect the actual hours employees at the Dolton location worked for each week during the last three years. (Document Request 14)

4.  Documents demonstrating off-the-clock work or rolling of hours or compelled payments by any employee at any time. (Document Request 7)

5.  Notices of termination during the last two years, and all discipline and/or terminations issued to any Dolton employees for the following: working off-the-clock; not fulfilling work duties in time 'allowed'; drawer shortages; working overtime; excess overtime; excess labor budgets; over budgeted amount of work hours or overtime hours; rolling of employee work time; any other reason not listed above. (Document Requests 12, 26)

6.  Personnel files for all Dolton employees for the last two years, and for all employees disciplined for working overtime, working beyond their scheduled hours, drawer shortages, or rolling hours. (Document Request 34)

7.  Identities of all employees ordered to pay drawer shortages, disciplined or terminated for drawer shortages, rewarded for not having drawer shortages, disciplined or terminated for working off the clock, disciplined or terminated for "rolling" work time. (Interrogatory 8)

For purposes of defining the class, Jenkins is entitled to know the number of employees who work or worked at the Dolton location and what their job titles are or were. To the extent that he seeks "all" documents containing such information, however, the request is too broad. White Castle is not required to produce *every* such document containing this information; a list of the employees and their job titles is sufficient.

Hours worked and wage rates at the Dolton location are also relevant to the claims Jenkins asserts. Wage information is potentially sensitive and may not warrant disclosure in all circumstances. *See, e.g.*, *Smith v. City of Chi.*, 04 C 2710, 2005 WL 3215572, at *2 (N.D. Ill. Oct. 31, 2005) (explaining that salary disclosure may violate the privacy of employees). The clear relevancy of such information to Jenkins's theory of this case, however, outweighs the

7

privacy concerns. Hour and wage information pertaining to the Dolton employees is therefore discoverable, subject to the entry of a protective order.

Jenkins also requests personal information about all Dolton employees. "In considering the disclosure of records of non-parties in discovery, courts balance the privacy concerns of the non-parties against the relevancy of the documents." *Arango v. Landry's, Inc.*, 2013 WL 3671704, at *2 (N.D. Ill. July 12, 2013). Plaintiffs are entitled to contact potential class members to obtain information about the merits of the case. *See generally Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). But a defendant is not typically required to provide the name and contact information for all class members, absent a showing of relevancy to the case. *Oppenheimer Fund, Inc.*, 437 U.S. at 354. Jenkins's requests are overbroad. White Castle is not required to produce the contact information and personnel file of every employee, as this goes beyond the information required to identify the size of the class and whether a common policy existed. Similarly overbroad is the request for "all" notices of termination for "any other reason not listed." As many reasons for terminations or discipline are not relevant to this case, "all" notices of termination are not discoverable.

Even so, Jenkins will need some discovery from Dolton employees to show the existence of a common policy, as required for preliminary certification of a collective action, and to show commonality and typicality, as required to prevail on a motion for Rule 23 class certification. Therefore, White Castle shall provide him the identities and personnel files of employees who were disciplined or terminated for reasons relevant to Jenkins's claims. Those are employees at Dolton who were ordered to "repay" drawer shortages, or who were disciplined or terminated for drawer shortages, "excess labor budgets," working off the clock, "rolling" work time, working overtime or excess overtime, or working beyond their scheduled hours. Such documents will be

8

discoverable subject to a protective order. Some records in the personnel files are likely irrelevant to Jenkins's claims. If the parties cannot agree as to the content of the personnel files that will be produced, White Castle may raise objections to the production of certain records.

Finally, Jenkins seeks discovery relevant to his individual retaliation claim:

1. All documents relating to Jenkins's work schedule for the last two years, including all email communications, all draft schedules, all requests by Jenkins or orders to him relating to the schedule. (Document Request 40)

2. Schedules of all the managers at Jenkins's current work location and at Dolton for the last three years. (Document Request 38)

These documents are relevant to Jenkins's contention that his work schedule was rearranged in a disruptive manner in retaliation for his complaints, and they are therefore discoverable.

## IV. CONCLUSION

Jenkins's motion to compel is granted in part, as outlined above. The parties are directed to meet and confer with the goal of agreeing to a protective order governing the discoverable evidence and to a schedule for responding to the document requests and interrogatories. The parties shall file a proposed schedule and protective order by October 22, 2013; if it is not agreed, the filing shall identify each party's position on the areas of disagreement.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: October 17, 2013

9