UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMY JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 C 7273 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| WHITE CASTLE ) | |
| MANAGEMENT CO., d/b/a ) | Magistrate Judge Arlander Keys |
| WHITE CASTLE SYSTEM INC., ) | |
| ) | |
| Defendant. ) | |

**<u>Memorandum Opinion and Order</u>**

Currently before the Court is Plaintiff's second motion to compel. [Dkt. #75.] For the following reasons, Plaintiff's motion to compel is granted.

BACKGROUND

This case was brought pursuant to the Fair Labor Standards Act ("FLSA") and filed in September of 2012. The initial Plaintiff, Jimmy Jenkins, also brought FLSA retaliation claims, alleging he was subject to numerous retaliations based on his requests for proper payment of wages, including overtime wages.

The parties have been conducting discovery since February, 2013. [dkt. #12]. While conducting discovery, Mr. Jenkins filed an initial motion to compel against White Castle. [dkt. #29]. In an Opinion and Order, dated October 17, 2013, the District Court granted in large part Plaintiff's motion to compel White Castle to answer the disputed

1

discovery requests. [dkt #44]. In that order, the Court specifically directed White Castle to respond to certain discovery requests and set the breadth in which it must respond.

Subsequently, Plaintiff Candace Roberts became a second named party in this case on November 20, 2013. [*See* Dkt. #62]. Ms. Roberts' claims also included claims of FLSA retaliation based on requests for proper payment of wages in July - September of 2013. Initially, Ms. Roberts' FLSA retaliation claims were limited to employment suspensions and harassment retaliations. Ms. Roberts was deposed on December 16, 2013. On December 23, 2013, Ms. Roberts was terminated from White Castle, allegedly as a result of a customer complaint that occurred on November 30, 2013.

Plaintiff issued a second motion to compel, requesting documents related to Ms. Roberts' termination and for similarly situated employees, as she believed her termination was due to her joining the FLSA case and/or asking for her overtime wages. White Castle produced a number of documents in response. However, Plaintiff had some issues and addressed those concerns in a correspondence dated February 5, 2014. (Exhibit One, February 5, 2014 correspondence). On February 10, 2014, Defendant responded and agreed to correct two issues; one of which is still in discussion and not subject to this Motion. (Exhibit Two, February 10, 2014 correspondence). All of the

disputed issues were not resolved by the 37.2 communications, and the parties now seek the Court's assistance.

## Standard of Review

The district court exercises significant discretion in ruling on a motion to compel. The district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case. Fed. R. Civ. P. 37(a)(4)(B), (c). Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties. *See*, *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). Courts have discretion to limit the extent of discovery after considering "[if] the burden or expense of the proposed discovery outweighs its likely benefit...the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(c)(iii).

Where the party from whom the documents are requested objects to the request, the party seeking the request may move for an order to compel production. *Gile v. United Airlines, Inc.*, 95 F.3d 496. The Seventh Circuit, however, has often

warned that "discovery is not to be used as a fishing expedition." *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971-972 (7th Cir. 1996). *Accord Brenneman v. Knight*, 297 Fed.Appx. 534, 538, 2008 WL 4748516, 2 (7th Cir. 2008) ("But requiring the staff to conduct a fishing expedition, particularly of the magnitude Brenneman requested, would have imposed too great a burden.")

There is a strong presumption toward public disclosure of court files and documents." *In re Bank One Secs. Litig.*, 222 F.R.D. 582, 585 (N.D. Ill. 2004)(citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982)). The Seventh Circuit has held that "[i]nformation that affects the disposition of litigation belongs in the public record unless a statute or privilege justifies nondisclosure." *United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009). Moreover, if a party claims that injury will result from public disclosure of certain information, it must provide support for such a statement. *Bank One*, 222 F.R.D. at 588 (citing *Baxter Int'l*, 297 F.3d at 547). Finally, after a court enters a protective order, "a party must continue to show good cause for confidentiality when challenged." *Id*. at 586 (citing *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

Analysis

Plaintiff's second motion to compel asks the Court to consider the following: 1) removing the designation of confidential from several documents; 2) compelling the production of documents without redaction of information; 3) requiring the Defendant to stop future redaction of any information of documents produced; and 4) ordering Defendant to produce documents on an ongoing basis. Overall, the Court finds Plaintiff's requests reasonable. The protective order entered was designed for the pending class-action suit, while the FLSA retaliation claims are a horse of a different color. Nonetheless, the Court will address each in turn.

*I. Confidential Designations*

Plaintiff asserts that White Castle produced documents based on Plaintiff Roberts' termination discovery requests, yet labeled nearly all those documents as "confidential". White Castle contends that the designations are based on the Protective Order entered by this Court [Dkt. #65], and are appropriate given the confidential information regarding Defendant's business operations and practices contained therein.

The December 4, 2013 Protective Order's purpose is to protect from public disclosure confidential information, and it

lists the categories by which such items can be designated. These categories are:

> (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; (g) personnel or employment records of a person who is not a party to the case; or (h) confidential information about Defendant's internal policies, business operations and practices, including employee payroll and time records and overtime compensation policies.

In its January 27, 2014 production of documents, White Castle designated as "Confidential" the Incident Report (WC-0003216-0003220) and accompanying evidence (WC-0003217-0003220) related to Plaintiff Roberts' September 25th incident, along with the 2011-2013 Customer Incident Summaries (WC-0003221-0003338).

Document WC 0003216 is an incident report in which a customer threw objects, including credit card scanners, sales computers and a case of hot chocolate at Ms. Roberts. As a result of this incident, Ms. Roberts was suspended in late September/October of 2013. Documents WC 003217-33220 are photos (still-images of video) of said incident. The Court finds that neither the Incident report (document 3216), nor the accompanying still-images fall in any category outlined in the entered Protective Order. White Castle avers that the information entails "internal policies". However, the Court does

not find these documents to show any policy, nor is the report a "trade secret," nor is it "commercial information," nor demonstrative of any "internal policies." Moreover, the customers, the one involved in the incident as well as the others in the restaurant at the time, have no expectation of privacy, as Defendant has posted notices of video and audio surveillance at all restaurant locations. White Castle additionally argues that the Incident Report and accompanying still-image evidence provided by Interface Security, White Castle's contracted security company, are confidential because they reflect White Castle's internal business operations, including identifying the company hired by White Castle to conduct surveillance, the presence of an alarm activation system, the time required for police to arrive after an alarm has been activated, and information related to a specific customer incident that is not available to the general public. Moreover, Defendant argues that the public filing of this information could hamper the effectiveness of the Restaurant's security systems and thus endanger the safety of employees and customers at the Dolton White Castle. The Court is not convinced. Defendant's apparent argument that the report is covered under category "h": internal business operations fails as the documents do not describe, reveal, list, or otherwise provide any information of 'internal business

7

operations'. As this information is not a category under the Protective Order, the marking of "confidential" is unsupported and the information must be de-designated accordingly.

Lastly, documents WC 0003221-3338 contain 107 pages of Customer Incident summaries of customer complaints at the Dolton White Castle during the years 2011-2013. As produced, the documents do not contain customer names or customer contact information as White Castle has redacted said information. Further the reports are simply complaints by customers. The only Protective Order category which could be considered covered are: (g) personnel or employment records of a person who is not a party to the case; or (h) confidential information about Defendant's internal policies, business operations and practices, including employee payroll and time records and overtime compensation policies.

Neither the "g" nor the "h" Protective Order categories apply. With regard to "g," the incident reports are not personnel records or employment records, as the documents are not found in the personnel files. With regard to "h," the reports do not contain internal policy information, as this information is communicated outside the corporation, thus is not internal. Additionally, there is no statement of policy in any of these complaint documents, nor reference to policy; rather

the documents refer to customer complaints and Defendant responses (or non-responses).

Finally, White Castle argues that the summaries identify employees who are the subjects of the complaints, and that the majority of these employees are not parties to this lawsuit. Although the Court generally agrees with Defendant that non-parties' information should not be easily disclosed, the documents herein reveal little identity information, and many of the names are already revealed in the Defendant's Rule 26 Disclosures. Additionally, Plaintiff has offered to designate documents with first name and last initial, which the Court finds suitable for this matter. Accordingly, the Court finds, in this regard, that such information is relevant to the issues in this case, or that it is reasonably calculated to lead to admissible evidence. Therefore, each document specified by Plaintiff must be de-designated as classified.

*II. Redaction of Customer Complaints*

Next, Plaintiff requests the Court to compel White Castle to produce the previously redacted customer information, as well as stop future redaction of information, of documents produced, including the names, home addresses, phone numbers, and email addresses, of the customers who have contacted the 1-800-CRAVE

customer hotline within the past three years about the Dolton location. White Castle argues that such production is not reasonably likely to lead to the discovery of admissible evidence, and its production would be an invasion of customers' right to privacy. The Court disagrees.

The customers could indeed possess information which could lead Plaintiff to discover further information related to Ms. Roberts Retaliation claims and/or the treatment of similarly situated employees. Plaintiff posits that such witnesses could share additional information which is not found in the complaint reports, such as the identity of the employee complained about, White Castle's response or non-response to the complaint, statements made to the customer by employees and/or members of management, etc. The Court agrees and finds Defendant's definition of what is, or could be, "relevant" to be misplaced. Moreover, the Court finds Defendant's argument regarding their duty to protect customers privacy whom called in complaints futile, as they chose to call the CRAVE hotline and volunteer their contact information.

Amongst other case law, Defendant relies upon *Reed v. Innovative Health & Fitness, Ltd.*, 259 Fed. Appx. 875, 878 (7th Cir. 2008), to further contend that Ms. Roberts could not be found "similarly situated" to any employees over the three year

period Plaintiff requests customer information because a different supervisor was in charge. *See also Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007) (similarly-situated employees must be supervised by the same person); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (noting the importance of showing a common supervisor, because different supervisors make employment decisions different ways); *Weiss v. Campagna-Turano Bakeries, Inc.*, 76 F. Supp. 2d 936, 940 (N.D. Ill. 1999) (finding employment actions taken by an old supervisor are "simply irrelevant" to performance expectations of the company under a new supervisor). The Court finds this narrow stance inaccurate.

The Seventh Circuit has made clear that the concept of being similarly situated "should not be applied mechanically or inflexibly, but rather is a common-sense flexible inquiry that seeks to determine whether there are enough common features between the individuals to allow a meaningful comparison." *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007). Herein, the Court finds that the past decision maker and the decision maker applicable to Ms. Robert's termination followed a business practice that assumed similar performance expectations, and that other employees engaged in similar conduct, allowing for a meaningful comparison.

Lastly, the Court finds Defendant's argument that the vast majority of the customer complaints requested by Plaintiff have no relationship to Ms. Roberts' conduct, but instead are food related, non-persuasive.  The Court is confident that Plaintiff's counsel will not waste his resources researching complaints irrelevant to his client's claims.  Accordingly, the Court orders Defendant to produce, within 10 days of the date of this decision, the previously redacted customer information, as well as cease future redaction of information regarding the customer-witness names and contact information.

*III. On-Going Production*

Finally, with regard to future complaints, White Castle argues that the Plaintiff's discovery request sought customer complaints made during "the three years prior to the filing of the Jenkins Complaint," and that there was no clear discovery request seeking production of customer complaints on an ongoing basis.  White Castle has agreed to comply with its obligations to respond to ongoing requests, which the Court commends.  The Federal Rules of Civil Procedure require ongoing production of relevant documents, as such, both parties must continue to produce relevant documents on an ongoing basis. This would include future complaints.

## Conclusion

For the reasons set forth above, Plaintiff's motion to compel [Dkt. #75.] is granted


Date: April 3, 2014

                        E N T E R E D:

                        MAGISTRATE JUDGE ARLANDER KEYS
                        UNITED STATES DISTRICT COURT