**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JIMMY JENKINS & CANDICE R. ROBERTS, individually and on behalf of all persons similarly situated as class representative under Illinois Wage Laws and/or as Collective representative of the Collective as permitted under the Fair Labor Standards Act,** ) ) ) ) ) ) ) ) **Plaintiff,** ) ) v. ) ) **WHITE CASTLE MANAGEMENT CO., d/b/a/ WHITE CASTLE SYSTEM, INC.,** ) ) ) ) **Defendant.** ) | No. 12 C 7273 Judge Gottschall Magistrate Judge Cole |

**MEMORANDUM OPINION AND ORDER**

This is the second round in the ongoing dispute over the production of personnel files of those employees who worked at the White Castle in Dolton, Illinois between September 12, 2009 and the present. In October 2013, Judge Gottschall denied the plaintiff's motion to compel the turnover of the personnel files of every employee who worked at the Dalton location for the period specified in Document Request No.34. [Dkt. 44]. She did, however, grant the motion for production of the personnel files of those employees who were disciplined or terminated for reasons relevant to Mr. Jenkins' claims in this case. Her order of October 17, 2013 defined the files to be produced as those of employees who were "ordered to 'repay' drawer shortages, or who were disciplined or terminated for drawer shortages, 'excess labor budgets,' working off the clock, 'rolling' work time, working over time or excess over time, or working beyond their scheduled hours." [Dkt. 44 at 7– 8].

While that order is the law of the case, *Minch v. City of Chicago,* 486 F.3d 294, 301 (7th Cir.2007), the plaintiff's current motion and supporting memorandum make no explicit mention of it and contain no discussion of its requirements or its limitations.[1] For the defendant, the current motion to compel production of the personnel files of all employees at the Dalton White Castle is simply a reprise of the earlier unsuccessful motion to compel and thus should suffer the same fate as its predecessor. While it is true that both motions involve Documents Request 34 and both seek production of all the personnel files of employees at the Dolton location, the situation is not quite the same as that confronting Judge Gottschall.

In compliance with the October 2013 Opinion, White Castle turned over documents reflecting complaints against both named and unidentified employees at the Dalton location. The personnel files of the identified employees were (or should have been) turned over to the plaintiff. However, apparently, no attempt was made by White Castle to review its personnel files to try to identify, if possible, who the unidentified employees might have been. The plaintiff's response to this series of events was to file the instant motion, again seeking all the personnel files so that he can attempt to ascertain which employees are similarly situated to Mr. Jenkins and "to avoid having to come back when the next set of discovery documents finds yet more complaints against employees which did not result in termination (or "ANY" action) by Defendant." (Plaintiff's Memorandum at 12, Dkt. 88)(capitalization and boldface in original).

While the latter justification is not an appropriate basis to grant the motion, the fact remains that the plaintiff is entitled to discovery of documents that refer, reflect or relate to complaints against employees of the Dolton store where plaintiff was employed, and, of course, the identities

---

[1] There is only an allusion to "the Court" having found an argument by the defendant "clearly incorrect."

of those employees. The defendant wisely does not contend that this information is not relevant, and such an argument would be foreclosed by Judge Gottschall's Opinion and by the breadth of the concept of relevancy under Rule 26.[2] Instead, the defendant's brief contends it has fully complied with Judge Gottschall's Opinion, and that it simply can't identify relevant individuals without a search of between 115 and 120 employee personnel files, each of which may well have upwards of 50 pages of documents. That would, White Castle insists, require a review of perhaps as much as 6,000 pages of information.

The plaintiff has effectively offered to do the work, but White Castle has declined the offer, while simultaneously insisting that requiring it to do the work would impose an "undue burden" on it.[3] That approach to the problem does not even give the plaintiff – or the court -- a Hobson's choice and results in an unsoluble conundrum. While that is obviously unsatisfactory, moment's reflection reveals a workable and appropriate solution: White Castle will review the files to ascertain whether they contain complaints of the kind Judge Gottschall has held are relevant.

---

[2]As expansive and inclusive as the definition of relevancy is under Rule 401 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587 (1993); *United States v. Marks,* 816 F.2d 1207, 1211 (7th Cir.1987); *United States v. Murzyn,* 631 F.2d 525, 529 (7th Cir.1980), the standard for relevancy under the discovery provisions of Rule 26 is even broader. *Hofer v. Mack Trucks,* 981 F.2d 377 (8th Cir.1992). In that context, the only question is whether the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *See* Rule 26(b)(1); *Redwood v. Dobson,* 476 F.3d 462, 469 (7th Cir.2007); *Wofford v. Celani*, 2012 WL 2847549, 3 (N.D.Ill.2012).

[3] Significantly, White Castle does not say the effort would be utterly futile, and that contention is now foreclosed. Having not been made it is waived. "Motion practice is not a series of trial balloons where you [submit] what you think is sufficient, [you] see how it flies, and if it does not, you go back and try again. If that is the way the system worked we would have motion practice going on forever," *Hansel 'N Gretel Brand, Inc. v. Savitsky,* 1997 WL 698179 (S.D.N.Y.1997), to the consequent disadvantage of other litigants "patiently waiting in the queue for the limited time of federal judges." *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996).

It is simply not adequate to reflexively say that this burden is "undue." That is a common refrain of parties to litigation who would prefer, understandably, not to comply with discovery requests that involve anything other than the slightest effort. But modern litigation often requires efforts that might have been regarded as difficult and thus avoidable years ago. A party claiming undue burden must do more than intone the phrase. *See Trading Technologies Intern., Inc. v. eSpeed, Inc.,* No. 04 C 5312, 2005 WL 1300778, *1 (N.D.Ill. 2005)(Moran, J.); *Semien v. Life Insurance. Co. of North America,* No. 03 C 4795, 2004 WL 1151608, *1 (N.D.Ill. 2004) (Kocoras, J.). Undue burden or expense, actual or potential, must be shown by "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16 (1981). *Nemir v. Mitsubishi Motors Corp.* 381 F.3d 540, 550 (6th Cir. 2004).

What is required is affirmative proof in the form of affidavits or record evidence. *Wagner v. Dryvit Systems, Inc.,* 208 F.R.D. 606, 610 (D.Neb.2001); *Jackson v. Montgomery Ward & Co.,* 173 F.R.D. 524, 529 (D.Nev.1997); *Zapata v. IBP, Inc.,* 1994 WL 649322 at *3 (D.Kan.1994). Nothing of the sort has been offered by White Castle. All we have is the *ipse dixi*t of counsel in his brief that White Castle will be required to review some 120-150 personnel files, which are estimated to contain perhaps as many as 6,000 total pages. That is not sufficient under *Gulf Oil*. And claims of "undue burden" are not exempt from the basic principle that unsupported statements of counsel, whether in briefs or in oral argument, are not evidence and do not count *See United States v. Adriatico-Fernandez,* 498 Fed.Appx. 596, 599-600 (7th Cir. 2012); *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.,* 437 F.3d 606, 610-611 (7th Cir.2006); *United States ex rel. Feingold v. AdminaStar Federal, Inc.,* 324 F.3d 492, 494, 497 (7th Cir.2003). That is all we have

here.

In any event, the excuse put forward by White Castle does not persuade. Common sense and human experience, which always have a role to play in judging, *United States v. Montoya De Hernandez,* 473 U.S. 531, 542 (1985); *Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.); *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir.2009); Posner, How Judges Think at 116 (Harv. Univ. Press 2008), leave virtually no room to argue that the task of reviewing 120-150 personnel files to see whether there have been complaints of a certain kind against the employee and whether disciplinary action has been taken is not nearly so arduous a task as White Castle suggests. It is not as though the contents of a personnel file are complicated or not easily recognizable at a glance to White Castle employees, who are familiar with their own files.

They can, with little effort, go through a file's contents rapidly, eliminating those pages that on their face have no relevance, such as employment applications and medical or other personal information. And it would be odd if the personnel files did not flag or somehow segregate complaints or disciplinary actions. Unless we have lost all sense of proportion, the burden in this case cannot be deemed "undue." *Compare Rowe v. Morton,* 525 Fed.Appx. 426, 429 (7th Cir.2013)(request for all reports of assaults committed with liquids would require a search encompassing 30 years of records constituted an undue burden)

Finally, discovery, the bane of modern litigation, *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000) (Posner, J.), is intrusive, expensive, and inherently burdensome. *Olivieri v. Rodriguez,* 122 F.3d 406, 409 (7th Cir.1997). It often requires efforts that might have been thought overly onerous years ago. But even viewed in a light most favorable to White Castle, the burden of review and identification involved in this case pales by comparison to burdens deemed not

undue in countless cases. *See, e.g., United States v. IBM Corp.,* 83 F.R.D. 97 (S.D.N.Y.1979)(ordering civil antitrust defendant to comply with a subpoena that defendant estimated required production of over five billion document pages); *In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 614 (7th Cir.1997)(discovery involved more than 1,000 depositions and over fifty million pages of documents); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 351, 360-361 (N.D.Ill.2005); *In re Linerboard Antitrust Litigation,* 296 F.Supp.2d 568, 577 (E.D.Pa.2003)(discovery required production of millions of pages of documents); *In re Fine Paper Antitrust Litigation,* 685 F.2d 810, 818 (3rd Cir.1982) (court permitted taking of 270 depositions and production of nearly two million documents in complex, nationwide antitrust claim).

In short, even if I were to accept at face value the unsupported statements made in White Castle's brief, I find them insufficient to warrant a finding of "undue burden." Where then does this leave us? First, the plaintiff is entitled to the information regarding complaints and discipline or the absence thereof in response to claims of employee misconduct of the kind enumerated in Judge Gottschall's 2013 Opinion and to the identities of the employees involved. Since the defendant does not want plaintiff's counsel examining the files to find the relevant information, it must do the job itself. Any other course leaves the plaintiff without the information that is absolutely critical to his case and that result would be inconsistent with Rule 26(b)(2)(C) and 26(c) and, what Judge Gottschall's October 2013 Opinion sought to accomplish.

A final word. The concerns expressed in the plaintiff's Supporting Memorandum and Reply brief about "overburdening" and "bothering the court" should not inhibit either White Castle or the plaintiff from making appropriate and timely applications for assistance to the court. After all, judges sit to resolve disputes that the parties could not. Fulfilling that function is neither a bother nor

a burden – at least not generally.[4] But the instant dispute is not of this kind.

## CONCLUSION

Consistent with the scope of the itemizations and the temporal and geographic specifications in Judge Gottschall's 2013 Opinion, the plaintiff is entitled to all documents that refer, reflect or relate to complaints against Dolton employees, and to any punishment or lack thereof imposed on those employees. Since the defendant objects to the plaintiff inspecting the personnel records to locate and identify the relevant documents – notwithstanding the protections afforded by the protective order – the defendant must undertake that task itself. The defendant shall provide the name of each employee from the Dolton store whose personnel file each specific set of responsive documents was taken, if the file contains the relevant information thereby enabling an identification to be made. The discovery required by this Opinion shall proceed on a rolling basis as promptly as is reasonably feasible.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/4/14

---

[4] For a conspicuous example of a case that is the exception to the rule, *see O'Toole v. Sears Roebuck and Co.,* 2014 WL 1388660, 1 (N.D.Ill. 2014)("But in this case, the disputes are so insignificant and the gap between the positions so infinitesimally small, that one may fairly question the spirit in which the [Rule 37.2] meetings were conducted. Or, at the very least, one may question the good sense of the negotiators."). *See also Regional Transportation Authority v. Grumman Flxible Corp.*, 532 F.Supp. 665, 667 (N.D. Ill. 1982). These cases seem hugely consequential when compared to a recent case in Rockford where the magistrate judge was asked to resolve a dispute about how long the lunch break would be.