IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMY JENKINS and CANDICE R. ROBERTS , <br><br> Plaintiffs, <br><br> v. <br><br> WHITE CASTLE MANAGEMENT COMPANY D/B/A WHITE CASTLE SYSTEM, INC., <br><br> Defendant. | Case No. 12-CV-07273 <br><br> Judge Gottschall <br><br> Magistrate Judge Cole |

### DEFENDANT WHITE CASTLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Despite a lengthy discovery period during which Plaintiffs were afforded every opportunity to develop their claims, the undisputed material facts make clear that each of their claims is ripe for summary judgment. *First*, their claims of retaliation under the Fair Labor Standards Act fail because they can neither establish a *prima facie* case of retaliation nor demonstrate that White Castle's legitimate reasons for its disciplinary decisions – terminating Plaintiff Roberts for calling one customer a "fucking bitch" and another "ignorant" and suspending Plaintiff Jenkins for stealing a customer's change – are a pretext for unlawful retaliation. *Second*, Plaintiffs' wage-hour claims under the Fair Labor Standards Act, the Illinois Minimum Wage Act, and the Illinois Wage Payment & Collection Act fail because, even accepting their allegations as true, they cannot establish that White Castle failed to pay them less than the minimum wage or an overtime premium in any workweek. Additionally, Plaintiffs' Illinois Wage Payment & Collection Act claims fail for the independent reason that there was no "contract or agreement" governing Plaintiffs' wages. *Third*, Plaintiffs' equitable claims for

*quantum meruit* and unjust enrichment fail because they are merely duplicative of, and preempted by, their statutory claims. **Fourth**, Plaintiff Jenkins' state law spoliation claim fails because the evidence he alleges that White Castle destroyed never existed. Thus, summary judgment for White Castle is appropriate and each of Plaintiffs' claims must be dismissed.

## ARGUMENTS & AUTHORITIES

Summary judgment is appropriate if the record shows "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Plaintiffs must present admissible evidence showing a genuine issue of material fact; a scintilla of evidence, or evidence that is not significantly probative, is insufficient to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiffs "cannot rest on [their] own deposition[s], or self-serving affidavits, to meet [their] burden of proof." *Gilmour v. Abbott Labs.*, 2005 WL 947082, at *6 (N.D. Ill. Apr. 11, 2005). Instead, they must make a showing sufficient to establish a dispute of material fact over the essential elements upon which they bear the burden of proof at trial. *Catrett*, 477 U.S. at 322; *Binz v. Brandt Construction Co.*, 301 F.3d 529, 532 (7th Cir. 2002). White Castle need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324.

**I.** **Plaintiffs Cannot Establish a *Prima Facie* Case of Retaliation and White Castle Had Legitimate, Non-Discriminatory Reasons For Disciplining Both Plaintiffs.**

Plaintiffs' retaliation claims (Complaint ¶¶ 137, 142, 144) under the Fair Labor Standards Act ("FLSA") are meritless. Neither Plaintiff can establish a *prima facie* case of retaliation because there is no causal connection between any of their alleged protected conduct and White Castle's disciplinary decisions. Moreover, even if they could establish a *prima facie* case of retaliation (which they cannot), their claims still fail because neither Plaintiff can establish that

White Castle's legitimate reasons for discipline were pretexts for unlawful retaliation.

### A. Plaintiffs Cannot Establish A *Prima Facie* Case of Retaliation.

To establish a *prima facie* case of retaliation under the FLSA, Plaintiffs must show: (1) that they engaged in protected conduct; (2) that they suffered an adverse employment action; and (3) that a causal link existed between their protected conduct and the adverse action. *Kasten v. Saint-Gobain Performance Plastics Corp*., 703 F.3d 966, 972 (7th Cir. 2012). To establish a causal link, Plaintiffs must show something more than "suspicious timing." *See*, *e.g.*, *Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508-09 (7th Cir. 2014); *see also Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("suspicious timing will rarely be sufficient in and of itself to create a triable issue") (internal quotations omitted). For an "inference of causation to be drawn solely on the basis of a suspicious timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action." *Kidwell*, 679 F.3d at 966 ("these extended time gaps" of two months and five weeks "alone militate against allowing an inference of causation based on suspicious timing."); *see also Loving v. Lew*, 512 F. App'x 616, 619 (7th Cir. 2013) (few weeks between plaintiff's EEOC filing and being "targeted for removal" was too long to show causation without other evidence). And when the employer's decision to take an adverse action is made before the employee engages in protected conduct, no causal link exists. *See*, *e.g.*, *Nelson v. Potter*, 2007 WL 1052490, at *11 (N.D. Ill. April 2, 2007) ("[Plaintiff] did not obtain immunity from an employment decision that had already been made.")

Plaintiff Roberts was first suspended in September 2013 – before her involvement in this case – after surveillance footage showed her leaving her work area to yell "bitch" at a customer. (SOF at ¶ 40.)[1] After returning to the main dining room, she then threatened "to find where the customer live[s] and go to [her] house," and said (about the customer) "that fucking bitch." (*Id*.)

---
[1] "SOF" refers to Defendant White Castle's Statement of Undisputed Material Facts.

Plaintiff Roberts admits the suspension she ultimately received for her behavior was not based on any protected conduct, flatly testifying, "I was suspended for cussing." (SOF at ¶ 41.) White Castle management chose to be lenient with Roberts by suspending her rather than terminating her. (SOF at ¶ 41.)

She was terminated a few months later, however, when she again engaged in intolerable conduct toward a customer on November 30, 2013. Namely, a customer complaint alleged that Roberts "was argumentative. . . yelled profanities at [the customer] . . and . . . walked away." (SOF at ¶ 38.) Surveillance footage of the incident confirms that Plaintiff Roberts was in an extended argument with the customer, whom she repeatedly called "ignorant." (SOF at ¶ 39.) She was terminated based on her unsuitable conduct on December 23, 2015. (SOF at ¶ 42.)

Plaintiff Roberts' termination occurred over two months after she joined this litigation as a Plaintiff (Dkt. No. 36) on October 17, 2015. The extended length of time between her protected conduct and her termination, in the absence of additional evidence (that Plaintiff Roberts does not possess), "alone militate[s] against allowing an inference of causation based on suspicious timing." *Kidwell*, 679 F.3d at 966. Although she argues that she was deposed in this litigation shortly before her termination, this is not the appropriate incident from which to measure temporal proximity because she was merely testifying about the same complaints she made months earlier in her complaint against White Castle. If complaining of wage-hour violations against White Castle in October 2015 resulted in no adverse action, there is no reason to believe that doing the same thing two months later was the cause of her termination.

Likewise, Plaintiff Jenkins' improper conduct was the only reason for his 5-day suspension in September 2012. On Plaintiff Jenkins' shift on August 25th, a drive-thru customer ordered food costing $1.69 and paid for it with a $20 bill, but was given no change. (SOF at ¶

31.) The customer later spoke with General Manager Sylvia Anderson about not receiving change. Ms. Anderson then called Plaintiff Jenkins and "told him that she was looking for the customer's change" and "either [he] or [the other employee on the shift] needs to get it back to [White] Castle." (SOF at ¶ 33.) Plaintiff Jenkins responded that "he would bring it to [Anderson]." (*Id*.) Having admitted to taking the change, and this not being the first time Jenkins had been written up for cash-handling problems, White Castle suspended Jenkins for five days. (SOF at ¶ 34-35.) Critically, the decision to discipline Jenkins for this conduct was made before White Castle communicated the suspension to Jenkins at a September 4th meeting. Indeed, White Castle management believed termination was the appropriate discipline for Plaintiff Jenkins prior to the meeting, but ultimately decided only to suspend him. (SOF at ¶ 35.) Thus, any protected conduct he alleges he engaged in during the meeting on September 4th cannot provide him with "immunity from an employment decision that had already been made." *Nelson*, 2007 WL 1052490, at *11.

      **B.**    <u>Plaintiffs Cannot Refute White Castle's Legitimate, Non-Retaliatory Reasons for Suspending Plaintiff Jenkins and Terminating Plaintiff Roberts' Employment.</u>

Even if Plaintiffs could establish a *prima facie* case of retaliation, which they cannot, summary judgment should still be granted because they cannot show that White Castle's legitimate, non-retaliatory reasons for discipline were a pretext for unlawful retaliation. *See Cuevas*, 752 F.Supp at 1410. Indeed, Plaintiffs must show that White Castle's reasons are "not worthy of credence," *Holland v. Jefferson National Life Insurance Co.,* 883 F.2d 1307, 1313 (7th Cir. 1989), and they must "refute [White Castle's] specific explanations." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986). They cannot do so here.

This Court regularly grants summary judgment in retaliation cases when employers discipline an employee based on violations of clear employment policies. *See Mitchell v. YRC*

*Inc.*, 2014 BL 293965, at *8 (N.D. Ill. Oct. 20, 2014) (violations of absenteeism policy). And summary judgment also is regularly granted when an employee is disciplined for being rude, condescending, disrespectful, or providing poor customer service. *See, e.g.*, *Cole v. Illinois*, 562 F.3d 812, 814 (7th Cir. 2009) (retaliation charge dismissed where employee was "rude and unhelpful"); *Westlake v. City of Springfield, Ill.*, 348 Fed. App'x 155, 157 (7th Cir. 2009) (employer received "complaints from the public about [employee's] lack of professionalism and rude conduct"); *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 304 (7th Cir. 2004) ("It was [the employee's] confrontational and disrespectful attitude . . . that created his problems.").

In their Complaint, Plaintiffs identify a selection of complaints filed by White Castle customers in an attempt to show that similarly situated employees received no comparable discipline. (Complaint ¶¶ 153-158.) But none of the conduct Plaintiffs identify in those complaints even closely resembles theft from customers or repeatedly insulting and cursing at customers, the conduct for which Plaintiffs were disciplined. (*See id.* at ¶¶ 153-155, 158 (describing employees as "unresponsive," providing "poor service," and "rude"); ¶ 157 (describing an employee as "unhelpful")). In deciding whether employees have engaged in similar misconduct such that they are "similarly situated" for comparison purposes, the "critical question is whether employees engaged in conduct of comparable seriousness." *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletic Dept.*, 510 F.3d 681 (7th Cir. 2007). The handful of run-of-the-mill customer complaints Plaintiffs identify do not present conduct of comparable seriousness to their own. *See Lampley v. Pollution Control Indus. Of Am.*, 353 Fed. Appx. 43, 43-44 (7th Cir. 2009) (making "rude" or "obscene" remarks is not comparable to an employee "making threats").

In light of White Castle's legitimate reasons for issuing discipline and Plaintiffs' inability

to establish that those reasons are "not worthy of credence," *Holland*, 883 F.2d at 1313, or to "specifically refute the facts which allegedly support [White Castle's] proffered reasons," Plaintiffs cannot establish pretext. *Mills v. First Fed. Sav. & Loan*, 83 F.3d 833, 845 (7th Cir. 1996); *see also Cuevas*, 752 F.Supp at 1410.

**II.     Summary Judgment is Appropriate on Plaintiffs' Wage and Hour Claims As Well.**

White Castle is also entitled to summary judgment on Plaintiffs' wage-hour claims. Here, Plaintiffs' claims under the FLSA and the Illinois Minimum Wage Law ("IMWL") fail because they cannot establish that any allegedly unpaid hours worked reduced their wages below the applicable minimum wage or entitled them to payment of overtime premiums. Further, their Illinois Wage Payment & Collection Act ("IWPCA") claims fail because the undisputed material facts show that there was no "contract or agreement" governing Plaintiffs' wages.

**A.     Plaintiffs Cannot Show They Were Paid Less Than The Minimum Wage.**

The FLSA and IMWL both[2] guarantee employees a minimum wage for all hours worked.[3] *See* 29 U.S.C. § 206(a); 820 ILCS 105/4. Here, both Plaintiffs' hourly wage rate was well above the minimum wage throughout the limitations period – Plaintiff Jenkins' average hourly wage was $10.91 per hour and Plaintiff Roberts' was $14.10 per hour. (SOF at ¶¶ 29-30.)[4] Nonetheless, Plaintiffs' minimum wage claims here rest on allegedly unpaid hours worked and cash shortages they allege White Castle made them repay. White Castle has express policies

---

[2] With regards to Plaintiffs' IMWL (Count I) and FLSA (Count III) claims, "[i]t is generally held that the IMWL parallels federal law, and the Illinois Administrative Code provides that federal FLSA regulations provide guidance in interpreting the IMWL. The same analysis generally applies to both the FLSA and IMWL." *O'Brien v. Encotech Const.*, 2004 WL 609798, at *7 (N.D. Ill. Mar. 23, 2004).

[3] The IMWL obligates employers to pay, for work performed from July 1, 2009, through June 30, 2010, "wages of not less than $8.00 per hour," and thereafter "wages of not less than $8.25 per hour." 820 ILCS 105/4 § 4(a)(1). At all times this minimum wage exceeded that provided by the FLSA.

[4] This average is achieved by averaging the Plaintiffs' hourly rate of pay over the limitations period. The statute of limitations for both the FLSA and IMWL claims is, at most, three years. *See* 29 U.S.C. § 255(a); 820 ILCS 105/12(a). Accordingly, Plaintiff Jenkins' claims commence September 2009 (Dkt. No. 1) and Plaintiff Roberts' commence in October 2010 (Dkt. No. 37).

prohibiting employees from working "off the clock" or repaying cash shortages and, despite Plaintiffs being well aware of those policies and responsible for enforcing them (as White Castle managers), Plaintiffs allege they did not follow them. But even assuming *arguendo* that Plaintiffs' allegations are true, there are still no minimum wage violations as a matter of law.

This Court routinely rejects minimum wage claims when the plaintiff's allegedly unpaid hours worked do not reduce the plaintiff's "regular rate of pay" below the statutory minimum. *See, e.g.*, *O'Brien v. Encotech Const. Services, Inc.*, 2004 WL 609798, at *6 (N.D. Ill. March 23, 2004) (Gottschall, J.) (dismissing FLSA claims where no contention plaintiffs received less than minimum wage for all hours worked); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 WL 1882449, at *5 (N.D. Ill. Aug. 18, 2004) (granting summary judgment where "plaintiffs have presented no evidence that any plaintiff received pay for a workweek of 40 hours or less that averaged below the statutory minimum wage"); *Cuevas v. Monroe Street City Club, Inc.*, 752 F. Supp. 1405, 1416-17 (N.D. Ill. 1990) (same). The regular rate of pay is determined by dividing the gross wages an employee received in a workweek by the total hours that employee worked. *Amador v. Guardian Installed Servs., Inc.*, 575 F. Supp. 2d 924, 927 (N.D. Ill. 2008).

Plaintiffs' regular rate of pay was never less than the statutory minimum. Both Plaintiffs rely on identical, unsubstantiated allegations to support their claims: (1) they worked at the restaurant "off the clock" without compensation; (2) White Castle management improperly edited their time to reflect fewer hours worked; and (3) they were force to cover cash shortages out of pocket, reducing their weekly compensation. Plaintiff Roberts alleges that, during the limitations period, she performed a total of 50 minutes of work "off the clock," that less than 1 hour of time was edited from her hours worked on certain occasions (although she can remember no specific week when this occurred), and she was required to repay a total of approximately $75

in cash shortages. (SOF ¶¶ 19, 26, 17.) For his part, Plaintiff Jenkins alleges that he worked approximately 60-80 minutes one week per month[5] "off the clock," that he had to repay drawer or safe shortages on occasion (but could not remember any specific instances of doing so), and that his time was shaved no more than 25 minutes on unidentified days. (SOF ¶¶ 21, 18, 22.)

Given that both Plaintiffs' hourly wages were well over the minimum wage throughout the limitations period, none of these allegations – even if true – amounts to a minimum wage violation. Of course, it is Plaintiffs' burden to show they performed work "for which [they were] not properly compensated," *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), yet they have provided no evidence of *when* their allegedly unpaid work occurred. And even if the Court assumes that all of Plaintiff Jenkins' allegations are true *and* the allegedly unpaid work occurred in the same week of the limitations period when he was earning his lowest hourly wage, his regular rate of pay still far exceeded the statutory minimum wage. Plaintiff Jenkins' lowest rate of pay during the limitations period was $10.42 per hour in 2009 (SOF at ¶ 29), when the Illinois minimum wage was set at $8.00 per hour. Thus, if he worked 35 hours in one week – the least he claims he worked on average (SOF at ¶ 28) – he would have earned $364.70, or $84.70 more than the minimum wage required (*i.e.*, 35 hours * $8.00 per hour = $280). Even if his unsubstantiated allegations are true and all occurred the same week (*i.e.*, four hours "off the clock", 25 minutes of time edited, and $30 of repaid shortages), his regular rate of pay would still be above the minimum wage (*i.e.*, ($364.70 - $30) / (35 hours + 4.42 hours) = $8.49 per hour).

This analysis similarly dooms Plaintiff Roberts' minimum wage claim. Her lowest rate of pay during the limitations period was $13.71 per hour, in 2010. (SOF at ¶ 30.) Thus, if she worked 37.5 hours in one week – the least she claims she worked on average (SOF at ¶ 27) – she

---

[5] Plaintiff Jenkins also claims he worked three or four hours "off the clock" during inspections on unspecified dates. (SOF at ¶ 21.)

would have earned $514.13, or $214.13 more than the statutory minimum of $300. Even if her allegations were all true and occurred in the same week – i.e., 50 minutes of off-the-clock work,[6] 60 minutes of time edited, and $75 repaid to cover cash shortages – her regular rate of pay would still be above the minimum wage (*i.e.*, ($514.13 - $75) / (37.5 hours + 1.83 hours) = $11.17 per hour). Thus, Plaintiffs' minimum wage claims fail as a matter of law.

### B. Plaintiffs Also Cannot Establish That They Worked Any Unpaid Overtime and, Even If They Did, It Was *De Minimis*.

Plaintiffs' overtime claims likewise fail because they are factually unsupported – they cannot identify any weeks in which they performed unpaid work that qualified for an overtime premium – and legally defective. The FLSA and IMWL only guarantee that employers pay an overtime premium for hours worked in excess of 40 per workweek. *See* 29 U.S.C. § 207(a)(1); 820 ILCS 105/4a. Because Plaintiffs offer no evidence that any allegedly unpaid hours worked occurred during a workweek that would have resulted in the payment of an overtime premium, the undisputed material facts entitle White Castle to summary judgment as a matter of law.

But even assuming for argument's sake they could identify a workweek in which they were not paid overtime, their allegations fail to establish anything but *de minimis* violations. Courts consider three factors in determining whether otherwise compensable time is *de minimis*, and thus not recoverable under the FLSA (and, by extension, the IMWL): (1) the practical administrative difficulty of recording additional time; (2) the aggregate amount of compensable time; and (3) whether the claimants performed the work on a regular basis. *Farmer v. DirectSat USA, LLC*, No. 08 C 3962, 2010 WL 3927640, at *11 (N.D.Ill. Oct.4, 2010). "In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for

---

[6] Plaintiff Roberts testified that she is not owed wages for any other "off the clock" work. (SOF at ¶ 24.) In any event, her allegations would not reduce her rate of pay below the minimum.

payroll purposes, may be disregarded." 29 C.F.R. § 785.47.

Here, the "aggregate amount of compensable time" alleged by Plaintiffs is nominal at best. *Farmer*, 2010 WL 3927640, at *11. And neither Plaintiff claims to have "performed the [unpaid] work on a regular basis." *Id.* To the contrary, over the course of many years the Plaintiffs testified to only a handful of occasions in which they allege they worked unpaid time. Moreover, each of them had the ability to edit time punches while working at White Castle and could have corrected any deficiencies in their time entries, but never did so. (SOF ¶ 25.) Their own testimony demonstrates that their allegations involve "uncertain and indefinite periods of time." *DeAscencio*, 500 F.3d at 374. Thus, even if their allegations are true, which they cannot substantiate and White Castle disputes, they have no claim for overtime as a matter of law.

C. Summary Judgment is Appropriate on Plaintiffs' IWPCA Claim.

Plaintiffs' claims (Complaint at ¶ 96) that White Castle violated the IWPCA also fail as a matter of law because Plaintiffs cannot establish any "contract or agreement" that governed their wages. The IWPCA "allows for a cause of action based on compensation wrongfully withheld" only when such cause of action arises "pursuant to an employment contract or agreement." *Reid v. Neighborhood Assistance Corp. of Am.*, 2013 WL 1087557, at *8 (N.D. Ill. Mar. 14, 2013) (quotation omitted); *see also Palmer v. Great Dane Trailers*, 2005 WL 1528255, at *3 (N.D. Ill. June 28, 2005) ("The plain meaning of the IWPCA indicates that pay is only recoverable under the statute when the employer has breached contractual obligations.") The contract or agreement, moreover, must specifically "provide for the payment of . . . wages to [the] Plaintiffs." *Enger, et al. v. Chicago Carriage Cab Co., et al.*, 77 F.Supp.3d 712 (N.D. Ill. 2014); *see also Wharton v. Comcast Corp.*, 912 F.Supp.2d 655, 658 (N.D. Ill. 2012) (the IWPCA "does not grant any independent right to payment of wages and benefits; instead it only enforces the terms of an existing contract or agreement.")

While an agreement under the IWPCA is "broader than a contract," it still "require[s] . . . a manifestation of mutual assent on the part of two or more persons." *Reid*, 2013 WL 1087557, at \*8 (*quoting Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012)). Importantly, a written disclaimer in the document(s) that a plaintiff alleges support such an agreement will defeat mutual assent. *See, e.g.*, *Mooney v. Wyndham Worldwide Ops., Inc.*, 2014 BL 182898, at \*3 (N.D. Ill. July 1, 2014) (Gottschall, J.) (explaining the "majority view in this district"); *Brand v. Comcast Corp.*, 2013 WL 1499008, at \*5 (N.D. Ill. Apr. 11, 2013); *Elder v. Comcast Corp.*, 2012 WL 3835100, at \*2 (N.D. Ill. Sept. 4, 2012) (rejecting argument that employer's handbook, which stated employees would be paid "for all hours worked," was an agreement under the IWPCA because the handbook contained a disclaimer that it was "not intended to create an express or implied contract of employment and you may not rely on it as such"); *Camilotes v. Resurrection Health Care Corp.*, 2012 WL 2905528, at \*6 (N.D. Ill. July 16, 2012) (policy could not support IWPCA claim because policy disclaimed creating an employment contract); *Harris v. Seyfarth Shaw LLP*, 2010 WL 3701322, at \*2 (N.D. Ill. Sept. 9, 2010) (disclaimer "fatal to [the plaintiff's] claims that the Compensation Plan was an agreement or contract under the IWPCA").

The Plaintiffs here fail to identify how or when they entered into a "contract or agreement" with White Castle to be "paid for all time worked at a set and agreed rate of pay." (Complaint at ¶¶ 1-2.) Potentially they rely upon the "Hours Worked Guideline" in White Castle's Employee Handbook, which states that "all hourly team members must be paid for all hours worked." (SOF at ¶ 15, 16.) But this argument fails for two independent reasons. First, the handbook does not "provide for the payment. . . of wages," *Enger,* 77 F.Supp.3d at 717, at a set and agreed rate of pay. Second, the handbook "includes an express disclaimer clarifying that the handbook's provisions have no binding effect." *Brand*, 2013 WL 1499008, at \*1. It reads, in relevant part:

> The Company at its sole discretion can and may unilaterally change delete or modify any provision contained in this manual. Nothing in this manual is intended to serve as an employment contract or guarantee of employment for any period of time. Either the Company or the team member may change the employment relationship at any time with or without cause.

(SOF at ¶ 8.)

Likewise, the performance appraisals on which Plaintiffs' wage rate was communicated by White Castle bear the notation, "[i]ndicates Team Member has read the information on this form – it does not imply agreement." (SOF at ¶ 10.) And if this were not enough (although it is), White Castle has expressly provided that the terms of Plaintiffs' employment, like their wages, "may unilaterally be chang[ed] delet[ed] or modif[ied]" at any time. (SOF ¶ 8.) Such a disclaimer negates Plaintiffs' unsupported claim of mutual assent to a contract or agreement.

### III. Plaintiffs' *Quantum Meruit* and Unjust Enrichment Claims Fail As Well.

Plaintiffs try to circumvent their failed statutory claims by resorting to common law claims of *quantum meruit* and unjust enrichment. (Complaint ¶ 126) But this approach fails because their common law claims are "based on the same factual assertions as [] FLSA claims" and their other statutory claims. *Morgan v. SpeakEasy, LLC,* 625 F.Supp.2d 632, 659 (N.D. Ill. 2008); *see also Farmer v. DirectSat USA, LLC,* No. 08 C 3962, 2010 WL 3927640, *14-16 (N.D. Ill. Oct. 4, 2010) (dismissing on preemption grounds common law claims for unjust enrichment and *quantum meruit*); *Sorensen v. CHT Corp.,* No. 03 C 1609, 2004 WL 442638, *6 (N.D. Ill. Mar. 10, 2004) (plaintiffs' "remedy is found in the FLSA and not the common law of quantum meruit"); *Enger v. Chicago Carriage Cab Co.*, 77 F. Supp. 3d 712, 718 (N.D. Ill. 2014) ("Because Plaintiffs' IWPCA claim fails, their cause of action for unjust enrichment also fails."); *Control Solutions LLC v. Oshkosh Corp.*, No. 10 C 121, 2012 WL 3096678, at *10 (N.D. Ill. July 27, 2012). Indeed, their *quantum meruit* and unjust enrichment claims rely on allegations that White Castle required its employees to repay drawer shortages (Complaint ¶ 128, 133), the

very same alleged conduct that underlies their statutory claims. Where statutory remedies such as those Plaintiffs seek are prescribed at law, equitable relief is foreclosed. *See, e.g.*, *Clarendon Associates v. Korzen*, 306 N.E.2d 299, 301 (Ill. 1973) (describing "the general rule . . . that equity will not assume jurisdiction to grant relief where an adequate remedy at law exists.")

**IV.     Plaintiff Jenkins' Spoliation Claim Is Legally and Factually Baseless.**

White Castle also is entitled to summary judgment on Plaintiff Jenkins' spoliation claim because, based on the undisputed material facts, the evidence he alleges White Castle destroyed never existed. (Complaint ¶ 185.) Under Illinois law, spoliation of evidence is a form of negligence. *Moore v. City of Chicago*, 2014 BL 150895, at *12-13 (N.D. Ill. May 30, 2014); *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012). To state a claim, Plaintiff must establish that (1) White Castle owed him a duty to preserve the evidence in question; (2) White Castle breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of Plaintiff Jenkins' inability to prove his underlying claim(s); and (4) as a result, he suffered actual damages. *Martin,* 979 N.E.2d at 661; *see also Boyd Travelers Ins. Co.*, 652 N.E. 2d 267, 271 (Ill. 1995) (party must "allege sufficient facts to support a claim that the loss or destruction of the evidence caused the plaintiff to be unable to prove an underlying lawsuit.") Plaintiff Jenkins cannot avoid summary judgment at the outset because the *evidence he alleges was destroyed never existed*.

Namely, audio footage of a conversation between White Castle management and Jenkins on September 4, 2012 did not exist, so could not have been destroyed by White Castle. In response to Plaintiffs' discovery requests, White Castle produced the in-store audio and video surveillance footage from that date. The video footage captures the meeting between Jenkins and White Castle management in a booth on the far side of the restaurant's dining area, but the associated audio – from one of two microphones above the restaurant's cash registers – does not

capture the conversation during that meeting. And while White Castle admittedly does not possess the audio from the second microphone, the surveillance system at the restaurant is not set up to record conversations in the restaurant's *dining room booths*, so the second microphone would not have captured the conversation even if it existed.

There are only audio surveillance systems in two customer order stations (one above the front register and one above the drive-thru window) at the restaurant. (SOF at ¶ 36.) Both are located on one side of a Plexiglas wall separating the cash registers, drive thru windows, and kitchen from the dining room. When asked about the audio from the September 4th meeting she participated in, General Manager Sylvia Anderson testified that the surveillance microphones "would not have picked up our conversation on the south of the dining room."[7] (SOF at ¶ 37.) Further, "[b]oth speakers are about 3 feet apart from each other, so it would pick up the same," meaning that the audio the system records is picked up on *both* microphones, so the loss of audio from one microphone would not materially impact what is recorded. (SOF at ¶ 36.) Because audio evidence of Plaintiff Jenkins' conversation with White Castle management in the restaurant dining room did not exist, his claim that it was negligently destroyed fails. Indeed, "Illinois does not recognize a spoliation claim based on evidence not yet in existence." *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 644 (7th Cir. 2011).

## CONCLUSION

For the reasons set forth above, Defendant White Castle System, Inc. respectfully requests that the Court grant summary judgment in its favor on all of Plaintiffs' claims.

---

[7] Conversations in the restaurant's booth area are captured by the surveillance system only when individuals are yelling, like when Plaintiff Roberts screamed at a customer (SOF at ¶40).

Dated: December 18, 2015   Respectfully submitted,

s/ Jonathan M. Linas
E. Michael Rossman (admitted *pro hac vice*)
emrossman@jonesday.com
Elizabeth L. Dicus
edicus@jonesday.com
JONES DAY
325 John H. McConnell Boulevard, Suite 600
P.O. Box 165017
Columbus, OH  43216.5017
Telephone:     +1.614.469.3939
Facsimile:     +1.614.461.4198

Jonathan M. Linas (IL No. 6290055)
jlinas@jonesday.com
JONES DAY
77 West Wacker Drive
Chicago, Illinois  60601-1692
Telephone:     +312.782.3939
Facsimile:     +312.782.8585

*Attorneys for Defendant*
*White Castle*

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 18, 2015, a true and accurate copy of the foregoing Defendant's Memorandum in Support of Its Motion for Summary Judgment was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their e-mail address on file with the Court:

John C. Ireland
THE LAW OFFICE OF JOHN C. IRELAND
636 Spruce Street
South Elgin, Illinois 60177

                                              s/ Jonathan M. Linas
                                              One of the Attorneys for Defendant