**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JIMMY JENKINS AND CANDICE R. ROBERTS, individually and on behalf of all persons similarly situated as class representative under Illinois Wage Laws and/or as Collective representative of the Collective as permitted under the Fair Labor Standards Act,**<br><br>    **PLAINTIFFS,**<br>  **v.**<br><br>**WHITE CASTLE MANAGEMENT COMPANY, D/B/A WHITE CASTLE SYSTEM INC.,**<br><br>    **DEFENDANT.** | **CASE NO. 12 CV 07273**<br><br>**JUDGE GOTTSCHALL**<br><br>**MAGISTRATE JUDGE COLE** |

**DEFENDANT WHITE CASTLE'S RESPONSES TO
PLAINTIFF'S SECOND REQUESTS TO ADMIT**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant White Castle ("White Castle") by and through its attorneys, responds to Plaintiff's Second Requests to Admit ("Requests") as follows:

**PRELIMINARY STATEMENT**

Discovery in this case is not yet complete and Defendant's investigation of the facts is continuing and will continue to and throughout the trial of this action. Defendant's responses to Plaintiff's discovery requests are, therefore, made without prejudice to Defendant's right to modify or supplement its responses and to introduce any and all evidence of any kind in the proceedings in this action.

Defendant has responded to Plaintiff's discovery requests as Defendant interprets and understands each request. If Plaintiff subsequently asserts an interpretation of any request that

differs from the understanding of Defendant, Defendant reserves the right to supplement its objections and/or responses.

Defendant responds solely for the purpose of, and in relation to, this action. Each response herein is made subject to all appropriate objections (including, but not limited to, objections concerning competency, relevance, materiality, propriety, and admissibility), which would require the exclusion of any information or thing at the time of trial.

## REQUESTS TO ADMIT

**REQUEST FOR ADMISSION NO. 1:** On or around 1/14/14 a customer complained that an Female Manager of White Castle's Dolton location received a complaint that she was unhelpful – as documented on WC 00003361-00362 and no manager nor employee at Dolton received any written discipline, suspension, or termination as a result of this complaint.

**RESPONSE:** Denied as written because White Castle received no such complaint on January 14, 2014. White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003361-3372, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on January 12, 2014 it received a complaint that a female manager of White Castle's Dolton restaurant was "unhelpful" as documented at WC-0003361-3362. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member

Suspension Reports, and Team Member Termination Reports based on the actions alleged in this

customer complaint.

**REQUEST FOR ADMISSION NO. 2:** On or around 1/21/14 a customer complained that an Female Manager of White Castle's Dolton location received a complaint that she seemed unconcerned with her issue – as documented on document WC 00003362-00363 and no manager nor employee at Dolton received any written discipline, suspension, or termination as a result of this complaint.

**RESPONSE:** Denied as written because White Castle received no such complaint on January

21, 2014. White Castle objects that the term "written discipline" is vague and ambiguous and

Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension

Reports, and Team Member Termination Reports. Additionally, White Castle states that its

Customer Incident Summaries, produced at WC-0003361-3372, are documents produced in the

regular course of business by White Castle and that these documents speak for themselves.

Subject to these objections, White Castle admits that on January 20, 2014 it received a complaint

that a female manager of White Castle's Dolton restaurant was "unconcerned" as documented at

WC-0003362-3363. White Castle neither admits nor denies that a Team Member Reprimand

Report, Team Member Suspension Report, or Team Member Termination Report was issued

based on the allegations in this customer complaint, but following a reasonable inquiry to date,

White Castle admits that it has located no Team Member Reprimand Reports, Team Member

Suspension Reports, and Team Member Termination Reports based on the actions alleged in this

customer complaint.

**REQUEST FOR ADMISSION NO. 3:** On or around 1/26/14 a customer complained that an Female cashier of White Castle's Dolton location received a complaint that she had a rude attituted – as documented on document WC 00003363-00364 and no manager nor employee at Dolton received any written discipline, suspension, or termination as a result of this complaint.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle

objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports. Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003361-3372, are documents produced in the regular course of

business by White Castle and that these documents speak for themselves. Subject to these

objections, White Castle admits that on January 26, 2014 it received a complaint that a female

cashier of White Castle's Dolton location had a "rude attitude" as documented at WC-003363-

64. White Castle neither admits nor denies that a Team Member Reprimand Report, Team

Member Suspension Report, or Team Member Termination Report was issued based on the

allegations in this customer complaint, but following a reasonable inquiry to date, White Castle

admits that it has located no Team Member Reprimand Reports, Team Member Suspension

Reports, and Team Member Termination Reports based on the actions alleged in this customer

complaint.

**REQUEST FOR ADMISSION NO. 4:** On or around 1/29/14 a customer complained that a
Female employee of White Castle's Dolton location received a complaint that she raised her
voice, had a rude tone and did not apologize of the wait – as documented on document WC
00003364-00365 and no manager nor employee at Dolton received any written discipline,
suspension, or termination as a result of this complaint.

**RESPONSE:** Denied as written because White Castle received no such complaint on January

29, 2014. White Castle objects that the term "written discipline" is vague and ambiguous and

Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension

Reports, and Team Member Termination Reports. Additionally, White Castle states that its

Customer Incident Summaries, produced at WC-0003361-3372, are documents produced in the

regular course of business by White Castle and that these documents speak for themselves.

Subject to these objections, White Castle admits that on January 28, 2014 it received a complaint

that a female employee of White Castle's Dolton restaurant "raised her voice, had a rude tone,

and did not apologize" for a customer's five minute wait, as documented at WC-0003364-3365.

White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member

Suspension Report, or Team Member Termination Report was issued based on the allegations in

this customer complaint, but following a reasonable inquiry to date, White Castle admits that it

has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 5:**  On or around 1/28/14 a customer complained about a long wait, that an Female Manager of White Castle's Dolton location received a complaint that she was unhelpful - as documented on document WC 00003366-00367 and no manager nor employee at Dolton received any written discipline, suspension, or termination as a result of this complaint.

**RESPONSE:**  Denied as written because White Castle received no such complaint on January

28, 2014. White Castle objects that the term "written discipline" is vague and ambiguous and

Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension

Reports, and Team Member Termination Reports.  Additionally, White Castle states that its

Customer Incident Summaries, produced at WC-0003361-3372, are documents produced in the

regular course of business by White Castle and that these documents speak for themselves.

Subject to these objections, White Castle admits that on March 28, 2014 it received a complaint

(the complaint found at WC-0003366-3367) that a "manager Stacey refused to provide her last

name or provide a solution to his concerns" and  "refused to provide him with the

number to her superior as well." at White Castle #67.  White Castle states that its District

Supervisor for Castle #67 reviewed the Rapid Eye footage and and found no evidence to

corroborate this complaint.  White Castle admits that, based on this finding, no Team Member

Reprimand Report, Team Member Suspension Report, or Team Member Termination Report

was issued based on the allegations in this customer complaint.

**REQUEST FOR ADMISSION NO. 6:**  On or around 3/28/14 a customer complained about a long wait, that an Female Manager of White Castle's Dolton location received a complaint that she was unhelpful – as documented on document WC 00003366-00367 and no manager nor employee at Dolton received any written discipline, suspension, or termination as a result of this complaint.

**RESPONSE:**  See Response to Request for Admission No. 5.

**REQUEST FOR ADMISSION NO. 7:**  On or around 11/4/2011 a customer complained that he or she was spoken to rudely by manager Patricia of White Castle's number 18, when he asked about his bill – as documented on document WC 003405/3410 and no manager nor employee at Castle #18 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken by Barbie Exline was that she "spoke with" the manager".

**RESPONSE:**  Admitted in part.  Denied in part.  White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports.  Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves.  Subject to these objections, White Castle admits on November 4, 2011, it received a complaint that a guest "was spoken to rudely by the manager, Patricia" at White Castle #18.  White Castle denies that no manager or employee at White Castle #18 received discipline and states that during the week of January 21, 2012, Patricia Rodriguez was given a "verbal" warning as documented in her 2012 Job Record.  Such a warning is considered by White Castle in determining what discipline is appropriate following subsequent employee misconduct and is part of White Castle's disciplinary process, although it is not a formal Reprimand, Suspension, or Termination.

**REQUEST FOR ADMISSION NO. 8:**  On or around 10/12/2011 a customer complained that a female crew member at White Castle's number #19 was rude and curt when he paid for bill with $20 dollar bill, as documented on document WC 003405/3410 and no manager nor employee at castle #19 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken by Barbie Exline was that she "spoke with" the employee.

**RESPONSE:**  Admitted in part.  Lack of information to admit or deny in part.  White Castle

objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports.  Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003405-3510, are documents produced in the regular course of

business by White Castle and that these documents speak for themselves.  Subject to these

objections, White Castle admits that on October 12, 2011 it received a complaint that a "female

crew member was rude and curt when [he] paid for his order with a $20.00 bill" at White Castle

#19.  White Castle neither admits nor denies that a Team Member Reprimand Report, Team

Member Suspension Report, or Team Member Termination Report was issued based on the

allegations in this customer complaint, but following a reasonable inquiry to date, White Castle

admits that it has located no Team Member Reprimand Reports, Team Member Suspension

Reports, and Team Member Termination Reports based on the actions alleged in this customer

complaint.  However, White Castle denies that no employee was disciplined for this complaint

and states that WC-0003405/3410 identifies "SPOKE W/" in the "ACTION TAKE" column and

that such a notation typically means that an employee was given a verbal warning.  Such a

warning may be considered by White Castle in determining what discipline is appropriate

following subsequent employee misconduct and is part of White Castle's disciplinary process,

although it is not a formal Reprimand, Suspension, or Termination.

**REQUEST FOR ADMISSION NO. 9:**  On or around 8/19/2011 a customer complained the cashier at Castle Number 66 was very rude, as she asked for a minute to order and she rudely

told her to order and continued to rush her to order, as documented on document WC003405/3411 and no manager nor employee at Castle 66 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken by Barbie Exline was that she "resolved per Barbie" on 9/2/2011.

**RESPONSE:**  Admitted in part.  Lack of information to admit or deny in part.  White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports.  Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves.  Subject to these objections, White Castle admits that on August 19, 2011 it received a complaint that a "cashier was very rude" and rushed a customer to order at White Castle #66.  White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 10:**  On or around 10/10/2011 a customer complained of 11 minute wait, customer spoke to Manager Tom, at Castle number 79, regarding wait, Tom provided poor service, because he stated the location was understaffed and told her there were several orders after hers as documented on document WC003407/3412 and disciplinary action took place on 10/24 against Manager Tom of Castle Number 79.

**RESPONSE:**  Admitted in part.  Denied in part.  White Castle admits that "[o]n or around 10/10/2011 a customer complained of 11 minute wait, customer spoke to Manager Tom, at Castle number 79, regarding wait, Tom provided poor service, because he stated the location was understaffed and told her there were several orders after hers as documented on document WC003407/3412."  White Castle denies that disciplinary action took place on October 24, 2011

and states that the Employee Reprimand Report for this incident was signed on October 21,

2011.

**REQUEST FOR ADMISSION NO. 11:** On or around 10/18/2011 a customer requested to the manger of Castle #79 for fully cooked food, His response was "If you have a problem with this location you should go elsewhere" and offered no apology, as documented on document WC003407/3412 and no manager nor employee at Castle 79 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken by Barbie Exline was that she "resolved per Barbie" on 11/6/2011 further that Manager Tom was not terminated based on this second incident which was "resolved" on 11/6/2011, 13 days after the discipline administered on 10/24/2011 to Manager Tom.

**RESPONSE:** Admitted in part. Denied in part. White Castle objects that the term "written

discipline" is vague and ambiguous and Defendant interprets it to mean Team Member

Reprimand Reports, Team Member Suspension Reports, and Team Member Termination

Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at

WC-0003405-3510, are documents produced in the regular course of business by White Castle

and that these documents speak for themselves. Subject to these objections, White Castle admits

that on October 18, 2011 it received a complaint that a manager informed a customer, ""If you

have a problem with this location you should go elsewhere" and did not offer any apology to the

customer at White Castle #79. White Castle denies that the complaint is proof that the

interaction actually happened and further denies that it necessarily involved "Manager Tom."

White Castle admits that "Manager Tom" was not terminated directly following an incident on

October 10, 2011 in which a customer complained that he "provided poor service," but states

that "Manager Tom" was terminated on April 25, 2012 for "[r]epeated poor Customer

Service…" White Castle neither admits nor denies that a Team Member Reprimand Report,

Team Member Suspension Report, or Team Member Termination Report was issued based on

the allegations in this customer complaint, but following a reasonable inquiry to date, White

Castle admits that it has located no Team Member Reprimand Reports, Team Member

Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 12:**  On or around 10/28/2011 a customer complained that manager Tom, at Castle number 79, was rude and unhelpful,  as documented on document WC003408/3413 and no manager nor employee at Castle 79 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken by Barbie Exline was that she "resolved per Barbie" on 12/8/2011, despite manager Tom having received discipline for a comparable incident on 10/24/2011,  Tom was not terminated based on this third incident which was "resolved" on 12/8/2011, and the second incident which was resolved on 11/6/2011, Tom was not terminated based on this second incident nor third incident within a two month period.

**RESPONSE:**  Denied as written because White Castle received no such complaint on October 28, 2011.  White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports.  Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on November 20, 2011 it received a complaint that "Tom the manager was rude and unhelpful" at White Castle #79.  White Castle denies that "Manager Tom" was not suspended for this incident and states that "Manager Tom" was suspended on December 9, 2011 for "[p]oor customer service, including 3 negative customer comments…"  White Castle admits that "Manager Tom" was not terminated directly following customer complaints on October 10, 2011 or November 20, 2011, but states that "Manager Tom" was terminated on April 25, 2012 for "[r]epeated poor Customer Service…" White Castle denies that the complaint on October 18, 2011 necessarily involved "Manager Tom," and denies that these three incidents are comparable either to each other or to the incidents for which Candice Roberts was terminated.

**REQUEST FOR ADMISSION NO. 13:** On or around 11/30/2011 a customer complained that manager Tom, at Castle number 79, was rude [and] unprofessional when he yelled across the room that she had to purchase a separate soft drink when she and a friend shared a her drink, as documented on document WC003407/3412 and no manager nor employee at Castle 79 received any written discipline, suspension, or termination as a result of this complaint and the only action documented by Barbie Exline was that she "resolved per Barbie" on 12/8/2011, despite manager Tom having received discipline for a comparable incident and Tom was not terminated based on this fourth incident which was "resolved" on 12/8/2011, and the second incident which was resolved on 11/6/2011, and third incident on 12/8/2011, Tom was not terminated based on this incident nor third nor forth incident within a two month period.

**RESPONSE:** Admitted in part. Denied in part. White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on November 30, 2011 it received a complaint that "manager, Tom, was rude unprofessional when he yelled across the room that she had to purchase a separate soft drink when she and friend shared her soft drink" at White Castle #79. White Castle denies that "Manager Tom" was not suspended or terminated following customer complaints on October 10, 2011, November 20, 2011, or November 30, 2011 and states that "Manager Tom" was first suspended on December 9, 2011 for "[p]oor customer service, including 3 negative customer comments…" and then terminated on April 25, 2012 for "[r]epeated poor Customer Service…" White Castle denies that the complaint on October 18, 2011 necessarily involved "Manager Tom," and denies that these four incidents are comparable either to each other or to the incidents for which Candice Roberts was terminated.

**REQUEST FOR ADMISSION NO. 14:** Defendant wrote in Plaintiff Roberts employment file that "Candace has already been suspended in this area" (Document WC 003211) and in Interrogatory Answers claimed "no employees responsive to this Interrogatory who engaged in

unprofessional conduct twice, like Plaintiff Roberts did…" (page 10 of Interrogatories) and "Plaintiff Roberts was previously suspended for similar conduct that occurred on September 25, 2013…" (page 8 Interrogatories) and in an email Plaintiff Roberts was referred to as "just suspended in October for customer service" (Document WC 0003348).

**RESPONSE:**  Admitted.

**REQUEST FOR ADMISSION NO. 15:**  Manager TOM of Castle #79 received a complaint on or around 10/24/2011, for which he was disciplined on or around 10/24/2011, Tom manager of castle #79 then received three more complaints within the next two months, and Manager Tom received no further discipline, nor was terminated thus an employees engaged in unprofessional conduct twice, like Plaintiff Roberts did, but Manager Tom was not terminated nor disciplined further.

**RESPONSE:**  Admitted in part.  Denied in part.  White Castle objects that the term "discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports.  Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves.  Subject to these objections, White Castle admits that Tom, a manager at White Castle #79 received three customer complaints on October 10, 2011, November 20, 2011, and November 30, 2011.  White Castle denies that that the complaint on October 18, 2011 necessarily involved "Manager Tom."  White Castle admits that Tom received a reprimand for the October 10, 2011 complaint.  White Castle denies that Tom was not suspended for these complaints and states that "Manager Tom" was first suspended on December 9, 2011 for "[p]oor customer service, including 3 negative customer comments…" and then terminated on April 25, 2012 for "[r]epeated poor Customer Service…"  White Castle denies that "employees engaged in unprofessional conduct twice, like Plaintiff Roberts did" and states that the complaints against Manager Tom were not in any way similar or comparable to those against Plaintiff Roberts.

**REQUEST FOR ADMISSION NO. 16:**  Manager Tom of Castle #79 as of 12/24/2011 had not filed a federal lawsuit for owed wages, had not filed a FLSA consent in a federal lawsuit for

owed wages, had not provided deposition testimony in support of a federal lawsuit for owed wages, and had not provided a written request to White Castle for payment of wages.

**RESPONSE:** Admitted in part, lack of information to admit or deny in part. White Castle admits that Manager Tom had not filed a federal lawsuit for owed wages, had not filed a FLSA consent in a federal lawsuit for owed wages, had not provided deposition testimony in support of a federal lawsuit for owed wages in relation to White Castle. White Castle further admits that Manager Tom had not provided a written request to White Castle for payment of wages. White Castle has no knowledge, and thus cannot admit or deny, that Manager Tom was involved in a wage and hour matter unrelated to White Castle.

**REQUEST FOR ADMISSION NO. 17:** On or around 11/23/2011 customer complained that an African American female manager at Castle #83 was very rude to employees as documented on document WC003409/3414 and no manager nor employee at Castle 83 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken by Barbie Exline was that she "spoke to TM member about choosing the correct words and tone" on 12/6/2011.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on November 23, 2011 it received a complaint that "an African American female manager was very rude to the employees" at White Castle #83. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it

has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports based on the actions alleged in this customer complaint.  However,

White Castle denies that no employee was disciplined for this complaint and states that WC-

3409/3414 identifies "SPOKE TO TM MEMBER ABOUT CHOOSING THE CORRECT

WORDS AND TONE" in the "ACTION TAKE" column and that such a notation typically

means that an employee was given a verbal warning.  Such a warning is considered by White

Castle in determining what discipline is appropriate following subsequent employee misconduct

and is part of White Castle's disciplinary process, although it is not a formal Reprimand,

Suspension, or Termination.

**REQUEST FOR ADMISSION NO. 18:**.  On or around 11/30/2011 a customer complained that
Manager Rosa, at Castle 79, was very rude, she ignored him when he spoke as documented on
document WC003408/3413 and no manager nor employee at Castle 79 received any written
discipline, suspension, or termination as a result of this complaint and the only action
documented taken by Barbie Exline was that she "spoke to TM about acknowledging the
customer immediately" on 12/6/2011.

**RESPONSE:**  Admitted in part.  Denied in part.  White Castle objects that the term "written

discipline" is vague and ambiguous and Defendant interprets it to mean Team Member

Reprimand Reports, Team Member Suspension Reports, and Team Member Termination

Reports.  Additionally, White Castle states that its Customer Incident Summaries, produced at

WC-0003405-3510, are documents produced in the regular course of business by White Castle

and that these documents speak for themselves.  Subject to these objections, White Castle admits

that on November 19, 2011 it received a complaint that "manager, Rosa, was very rude [and]

ignored him when he spoke" at White Castle #79.  White Castle denies that no employee was

disciplined for this complaint and states that WC-3408/3413 identifies "SPOKE TO TM ABOUT

ACKNOLEDGEING CUSTOMER IMMEDIATELY" in the "ACTION TAKE" column and

that such a notation typically means that an employee was given a verbal warning.  Such a

warning is considered by White Castle in determining what discipline is appropriate following

subsequent employee misconduct and is part of White Castle's disciplinary process, although it

is not a formal Reprimand, Suspension, or Termination.

**REQUEST FOR ADMISSION NO. 19:** On or around 11/17/2012 customer complained of
filthy dining area, at Castle #79, the customer spoke to manager Hector who was unhelpful, and
another manger Maria refused to speak to her as documented on document WC003432/3453 and
no manager nor employee at Castle 79 received any written discipline, suspension, or
termination as a result of this complaint and the only action documented taken was "resolved as
per Barbie" on 1/27/13.

**RESPONSE:** Admitted in part. Denied in part. Lack of information to admit or deny in part.

White Castle objects that the term "written discipline" is vague and ambiguous and Defendant

interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and

Team Member Termination Reports. Additionally, White Castle states that its Customer

Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular

course of business by White Castle and that these documents speak for themselves. Subject to

these objections, White Castle admits that on November 17, 2012 it received a complaint that

"the dining room was filthy…manager Hector…was very unhelpful…Hector has too much hair

on his arms and she felt this was unsanitary [and] manager Maria refused to speak with her" at

White Castle #79. White Castle neither admits nor denies that a Team Member Reprimand

Report, Team Member Suspension Report, or Team Member Termination Report was issued

based on the allegations in this customer complaint, but following a reasonable inquiry to date,

White Castle admits that it has located no Team Member Reprimand Reports, Team Member

Suspension Reports, and Team Member Termination Reports based on the actions alleged in this

customer complaint.

**REQUEST FOR ADMISSION NO. 20:** On or around 7/5/2011 a customer complained that a
manager, at castle 83, had a very bad attitude, and was very rude, as the manger did not thank the
customer for the order, was not wearing a name tags nor was the crew wearing name tags,

manager was described as an African- American female with short hair and medium build as documented on document WC003408/3413 and no manager nor employee at Castle 83 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken by Barbie Exline was that she "resolved as per Exline" on 7/31/2011.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle

objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports. Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003405-3510, are documents produced in the regular course of

business by White Castle and that these documents speak for themselves. Subject to these

objections, White Castle admits that on July 5, 2011 it received a complaint that a "manager had

a very bad attitude and was very rude…he was not thanked for his order by the manager…the

crew members and the manager were not wearing name tages…[and] [h]e described the manager

as an African American female short hair medium built" at White Castle #83. White Castle

neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension

Report, or Team Member Termination Report was issued based on the allegations in this

customer complaint, but following a reasonable inquiry to date, White Castle admits that it has

located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 21:** On or around 11/23/2011 customer complained that African American female manager was very rude to employees at castle 83, as9documented on document WC003408/3414 and no manager nor employee at Castle 83 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken by Barbie Exline was that she spoke to "TM" member about choosing the correct words and tone on 12/6/2011.

**RESPONSE:** See response to Request for Admission No. 17.

**REQUEST FOR ADMISSION NO. 22:** On or around 5/13/2011 customer complained that short white female employee, at Castle #107, rudely yelled at the crew about the problem, felt

she acted unprofessionally by slamming drink cups down on the front counter and the guest had to wait an added 10 minutes for the corrected order as documented on document WC003409/3414 and no manager nor employee at Castle 83 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per DM" on 5/13.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on May 13, 2011 it received a complaint that a "short Caucasian female employee rudely yelled at the crew about the problem, she felt she acted unprofessionally by slamming drink cups down on the front counter and the guest had to wait an additional 10 minutes to receive the correct order" at White Castle #107. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 23:** On or around 12/6/2012 customer complained that when she spoke to a female manager, of Castle # 19, about several persons sleeping in the booths, since is ongoing issue over two weeks, guest was insulted by her flippant, unprofessional response as documented on document WC003416/3437 and no manager nor employee at Castle 19 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "spoke with also w mgr" on 12/7.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on December 6, 2012 it received a complaint that a customer "spoke to the female manager about several individuals sleeping in the booths since this has been an ongoing issue during the past 2 weeks. Guest was insulted by her flippant, unprofessional response" at White Castle #19. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint. However, White Castle denies that no employee was disciplined for this complaint and states that WC-3416/3437 identifies "SPOKE W/ AND ALSO W/ MGR" in the "ACTION TAKE" column and that such a notation typically means that an employee was given a verbal warning. Such a warning is considered by White Castle in determining what discipline is appropriate following subsequent employee misconduct and is part of White Castle's disciplinary process, although it is not a formal Reprimand, Suspension, or Termination.

**REQUEST FOR ADMISSION NO. 24:** On or around 8/10/2012 customer complained he/she was told no tea refills were allowed and the manager, of Castle #21, told the customer the same thing but did so in an extremely rude and hostile way. Guest stated he avoided the location I past because of this manager asked for Upper management to give better service as documented on document WC003418/3439 and no manager nor employee at Castle 21 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per district" on 11/29.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on August 10, 2012 it received a complaint that "a female employee told him there were no refills on tea…stated the male manager came out of an office and told him the same thing in an extremely rude and hostile way [and] stated he avoided this location in the past because of this manager and suggested someone from upper management reaches out to him regarding giving better customer service" at White Castle #21. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 25:**  On or around 11/27/2012 customer complained that a female manager, of Castle # 21, spoke to her in a rude manner when she placed her order  as documented on document WC003418/3439 and no manager nor employee at Castle 21 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per district" on 11/28.

**RESPONSE:**  Admitted in part.  Lack of information to admit or deny in part.  White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports.  Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves.  Subject to these objections, White Castle admits that on November 27, 2012 it received a complaint that "a female manager spoke to her in a rude manner when she placed her order" at White Castle #21.  White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 26:**  On or around 11/29/2012 a customer complained that employee and managers were rude by acting as if he were bothering them at Castle # 21, spoke to her in a rude manner when she placed her order  as documented on document WC003420/3441 and no manager nor employee at Castle 21 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per district".

**RESPONSE:**  Denied as written because White Castle received no such complaint on November 29, 2012.  White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports.  Additionally, White Castle states that its

Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on December 2, 2012 it received a complaint that "the employees and managers were rude by acting if he was bothering them" at White Castle #21. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 27:** On or around 11/29/2012 a customer complained an older African-American female cashier was rude and rushed the customer's order at Castle # 21, spoke as documented on document WC003420/3441 and no manager nor employee at Castle 21 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per Barb Exline" on 6/21.

**RESPONSE:** Denied as written because White Castle received no such complaint on November 29, 2012. White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on June 17, 2012 it received a complaint that an "older African American female cashier was rude and rushed her to order" at White Castle #21. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on

the allegations in this customer complaint, but following a reasonable inquiry to date, White

Castle admits that it has located no Team Member Reprimand Reports, Team Member

Suspension Reports, and Team Member Termination Reports based on the actions alleged in this

customer complaint.

**REQUEST FOR ADMISSION NO. 28:** On or around 3/12/2012 a Customer complained that
male cashier was not friendly and dropped her change. female manager Kiah, of Castle #25,
treated customer as if she did not care as documented on document WC003420/3441 and no
manager nor employee at Castle 25 received any written discipline, suspension, or termination as
a result of this complaint and the only action documented taken was "resolved as per Barb Exline
district supervisor" on 3/20.

**RESPONSE:** Admitted in part. Denied in part. Lack of information to admit or deny in part.

White Castle objects that the term "written discipline" is vague and ambiguous and Defendant

interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and

Team Member Termination Reports. Additionally, White Castle states that its Customer

Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular

course of business by White Castle and that these documents speak for themselves. Subject to

these objections, White Castle admits that on March 12, 2012 it received a complaint that "the

male cashier was not friendly…and he dropped her change" then when the "[g]uest talked to the

female manager, Kiah…the guest felt she did not care" at White Castle #29. White Castle

admits that, based on a review of their personnel files, "Manager Kiah" did not receive any

written discipline, suspension, or termination as a result of the complaint. White Castle neither

admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or

Team Member Termination Report was issued based on the allegations in this customer

complaint, but following a reasonable inquiry to date, White Castle admits that it has located no

Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member

Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 29:** On or around 5/26/2012 a customer complained that the location, Castle #25, was understaffed and dirty. Customer also complained that the manage of Castle #25 did not apologize for inconvenience, and treated the customer as if she did not care, as documented on document WC003420/3441 and no manager nor employee at Castle 25 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "VED per Barbie Exline, Dist. Sup." on 7/12.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle

objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports. Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003405-3510, are documents produced in the regular course of

business by White Castle and that these documents speak for themselves. Subject to these

objections, White Castle admits that on November 26, 2012 it received a complaint that "the

location was understaffed…stated the dining room floor and tables were dirty [and] when she

addressed the issue with the manager on duty she did not apologize for the inconvenience" at

White Castle #25. White Castle neither admits nor denies that a Team Member Reprimand

Report, Team Member Suspension Report, or Team Member Termination Report was issued

based on the allegations in this customer complaint, but following a reasonable inquiry to date,

White Castle admits that it has located no Team Member Reprimand Reports, Team Member

Suspension Reports, and Team Member Termination Reports based on the actions alleged in this

customer complaint.

**REQUEST FOR ADMISSION NO. 30:** On or around 5/26/2012 a customer complained the female crew manager at Castle #25 spoke to him rudely and snatched his money out of his hand, as documented on document WC003421/3442 and no manager nor employee at Castle 25 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "VED per Barbie Exline, Dist. Sup.".

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle

objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports. Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003405-3510, are documents produced in the regular course of

business by White Castle and that these documents speak for themselves. Subject to these

objections, White Castle admits that on May 26, 2012 it received a complaint that "the female

crew manager spoke to him rudely and snatched his money out of his hand" at White Castle #25.

White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member

Suspension Report, or Team Member Termination Report was issued based on the allegations in

this customer complaint, but following a reasonable inquiry to date, White Castle admits that it

has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 31:** On or around //2012 a customer complained of plastic
in food eaten by child, manager of Castle #25 did not apologize and manager Gwendyln was
rude and laughed about the issue, as documented on document WC003422/3443 and no manager
nor employee at Castle 25 received any written discipline, suspension, or termination as a result
of this complaint and the only action documented taken was "VED per district" on 1/22.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle

objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports. Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003405-3510, are documents produced in the regular course of

business by White Castle and that these documents speak for themselves. Subject to these

objections, White Castle admits that on January 10, 2012 it received a complaint that "there was

plastic in the sandwich…she had given the sandwich to her grandchild…she returned the

sandwich to the manager and she did not apologize…the manager, Gwendolyn, was rude and

laughed about the issue" at White Castle #25. White Castle neither admits nor denies that a

Team Member Reprimand Report, Team Member Suspension Report, or Team Member

Termination Report was issued based on the allegations in this customer complaint, but

following a reasonable inquiry to date, White Castle admits that it has located no Team Member

Reprimand Reports, Team Member Suspension Reports, and Team Member Termination

Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 32:** On or around 10/4/2012 a customer complained that male drive thru attendant, at Castle #36, slammed the drive thru window in her face, as documented on document WC003422/3443 and no manager nor employee at Castle 36 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per district" on 10/9.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle

objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports. Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003405-3510, are documents produced in the regular course of

business by White Castle and that these documents speak for themselves. Subject to these

objections, White Castle admits that on October 4, 2012 it received a complaint that "the male

drive thru attendant slammed the window in her face, which she felt was rude" at White Castle

#36. White Castle neither admits nor denies that a Team Member Reprimand Report, Team

Member Suspension Report, or Team Member Termination Report was issued based on the

allegations in this customer complaint, but following a reasonable inquiry to date, White Castle

admits that it has located no Team Member Reprimand Reports, Team Member Suspension

Reports, and Team Member Termination Reports based on the actions alleged in this customer

complaint.

**REQUEST FOR ADMISSION NO. 33:**  On or around 10/15/2012 a customer complained that a female manager, at Castle #36, yelled at employees, in front of customers, which the customer felt was unprofessional, as documented on document WC003423/3443 and no manager nor employee at Castle 36 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per district" on 10/22.

**RESPONSE:**  Admitted in part.  Lack of information to admit or deny in part.  White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports.  Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves.  Subject to these objections, White Castle admits that on October 15, 2012 it received a complaint that a "female manager yelled at the employees in front of the customers" at White Castle #36.  White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 34:**  On or around 5/9/2012  a Customer complained that Gail, at Castle Number 36, was rude when he asked for no salt on his order, as documented on document WC003423/3443 and no manager nor employee at Castle 36 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per district" on 6/2.

**RESPONSE:**  Admitted in part.  Lack of information to admit or deny in part.  White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports.  Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on May 9, 2012 it received a complaint that "GAIL WAS RUDE WHEN HE ASKED FOR NO SALT IN HIS ORDER" at White Castle #36. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 35:** On or around 8/21/2012 a customer complained receipt of a counterfeit $10.00 bill, the customer went back spoke to manager of Castle #36 who was rude and unhelpful. Manager denied the bill came form that restaurant, as documented on document WC003424/3444 and no manager nor employee at Castle 36 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per district" on 9/4.

**RESPONSE:** Denied as written because White Castle received no such complaint on August 21, 2012. White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on August 22, 2012 it received a complaint that "the unit gave her son a counterfeit $10.00 bill with his change" and when "her son went back to the unit and spoke to the manager who was rude and unhelpful [and] the manager denied the bill came from the unit" at White Castle #36. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member

Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 36:** On or around 9/14/2012 a customer complained that the female cashier had a rude attitude when she informed her that she had already paid for her order, as documented on document WC003425/3446 and no manager nor employee at Castle 36 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per district" on 9/30.

**RESPONSE:** Admitted in part. Lack of information to admit or deny in part. White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports. Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on September 14, 2012 it received a complaint that a "female cashier had a rude attitude when she informed her that she already paid for her order" at White Castle #36. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 37:** On or around 5/19/2012 a customer complained that female manger Maria, at Castle #66, was rude when he asked about the wait and gave his order to another customer. Customer returned the wrong food, Maria rolled her eyes and did not apologize, customer witnessed Maria being rude towards the other customers, as documented on

document WC003227/3448 and no manager nor employee at Castle 66 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "investigated TM was not rude".

**RESPONSE:**  Admitted in part.  Denied in part.  White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports.  Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves.  Subject to these objections, White Castle admits that on May 19, 2012 it received a complaint that "manager, Maria, was rude when he asked about the wait and she gave his order to another guest," then when the "guest returned the order…Maria rolled her eyes and did not apologize," and further that he "witnessed Maria being rude towards other guest also."  White Castle denies that the complained of rude conduct actually occurred.  White Castle admits that no employee received any written discipline, suspension, or termination as a result of the complaint, that after an investigation it was determined that Maria was not rude, and that the notation "INVESTIGATED AND TM WAS NOT RUDE" was entered on the log.

**REQUEST FOR ADMISSION NO. 38:**  On or around 5/4/2012 customer complained the male manager Ken, of Castle # 66, was rude and unhelpful as she ordered. Customer also complained that Manager Ken made a rude comment to her when she asked the price twice. Customer also complained that when the customer called Castle #66, and spoke to female manager Vita, the customer complained that Vita was unresponsive to the problem and stood up for the action of Ken. Vita gave phone to Ken and he refused to apologize for his actions, as documented on document WC003228/3449 and no manager nor employee at Castle 66 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "investigated TM was not rude".

**RESPONSE:**  Admitted in part.  Denied in part.  Lack of information to admit or deny in part.

White Castle objects that the term "written discipline" is vague and ambiguous and Defendant

interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and

Team Member Termination Reports. Additionally, White Castle states that its Customer

Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular

course of business by White Castle and that these documents speak for themselves. Subject to

these objections, White Castle admits that on May 4, 2012 it received a complaint that a "male

manager Ken was rude and unhelpful as she ordered…he made a rude comment to her when she

requested the price twice…she called the location and addressed the issue with female manager,

Vita [who] was unresponsive to the problem and stood up for the actions of Ken. Guest stated

she gave Ken the phone and he refused to apologize for his actions" at White Castle #66. White

Castle denies that it has a record of any employees named Ken or Vita who worked as managers

at White Castle #66 on May 4, 2012. White Castle neither admits nor denies that a Team

Member Reprimand Report, Team Member Suspension Report, or Team Member Termination

Report was issued based on the allegations in this customer complaint, but following a

reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand

Reports, Team Member Suspension Reports, and Team Member Termination Reports based on

the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 39:** On or around 4/9/2012 customer complained that the customer was rushed in order, waited 10 minutes got food with attitude and no apology. The customer further complained that when asked for manager, of castle #66, the manger Pearl was also rude, argumentative and unhelpful. Asked to have meal replaced, not accepted till another employee explained then when added to new meal, got attitude from manager as documented on document WC003428/3449 and no manager nor employee at Castle 66 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "resolved as per Barbie Exline".

**RESPONSE:** Admitted in part. Denied in part. Lack of information to admit or deny in part.

White Castle objects that the term "written discipline" is vague and ambiguous and Defendant

interprets it to mean Team Member Reprimand Reports, Team Member Suspension Reports, and

Team Member Termination Reports.  Additionally, White Castle states that its Customer Incident Summaries, produced at WC-0003405-3510, are documents produced in the regular course of business by White Castle and that these documents speak for themselves.  Subject to these objections, White Castle admits that on April 9, 2012 it received a complaint that "it took 10 minutes to get her food…cashier Sage handed the food to her without an apology and with an attitude….he rushed her and was rude… she went in to talk with manager Pearl about the wait and she was also rude, argumentative, and unhelpful…she asked to have her meal replaced, but the manager was unwilling until another team member told her what had occurred in the drive-thru [and] the manager had an attitude when she wanted to add to her order." at White Castle #66.  White Castle denies that no employee received a reprimand for this incident and states that Pearl was disciplined for "improper customer service" on April 18, 2012.  White Castle denies that it has a record of any employee named Sage who worked at White Castle #66 on April 6 or 9, 2012.  White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 40:**  On or around 4/3/2012 customer complained that male manager of Castle #79 refused to wait on him as documented on document WC003430 and no manager nor employee at Castle 66 received any written discipline, suspension, or termination as a result of this complaint and the only action documented taken was "service dept looked and found nothing" on 4/14.

**RESPONSE:**  Admitted in part.  Lack of information to admit or deny in part.  White Castle objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports.  Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003405-3510, are documents produced in the regular course of

business by White Castle and that these documents speak for themselves.  Subject to these

objections, White Castle admits that on April 3, 2012 it received a complaint that a "male

manager told her he had a 70 burger order and refused to wait on them." at White Castle #79.

White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member

Suspension Report, or Team Member Termination Report was issued based on the allegations in

this customer complaint, but following a reasonable inquiry to date, White Castle admits that it

has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports based on the actions alleged in this customer complaint.

**REQUEST FOR ADMISSION NO. 41:**  On or around 4/3/2012 customer complained that
male manager of Castle #79 refused to wait on him as documented on document
WC003430/3451 and no manager nor employee at Castle 66 received any written discipline,
suspension, or termination as a result of this complaint and the only action documented taken
was "service dept looked and found nothing" on 4/14.

**RESPONSE:**  See response to Request for Admission No. 40.

**REQUEST FOR ADMISSION NO. 42:**  On or around 6/29/2012 customer complained that
female manager Alision, of Castle 79, did not acknowledge him, someone else served first,
customer demanded to be waited on, Alision refused as documented on document
WC003430/3451 and no manager nor employee at Castle 66 received any written discipline,
suspension, or termination as a result of this complaint and the only action documented taken
was "Exline will discuss the discipline with Gm".

**RESPONSE:**  Admitted in part.  Lack of information to admit or deny in part.  White Castle

objects that the term "written discipline" is vague and ambiguous and Defendant interprets it to

mean Team Member Reprimand Reports, Team Member Suspension Reports, and Team

Member Termination Reports.  Additionally, White Castle states that its Customer Incident

Summaries, produced at WC-0003405-3510, are documents produced in the regular course of

business by White Castle and that these documents speak for themselves. Subject to these objections, White Castle admits that on June 29, 2012 it received a complaint that "female manager, Allison, did not acknowledge him," when "someone else pulled up and ordered and the caller demanded that Allison takes his order first and she refused" at White Castle #79. White Castle neither admits nor denies that a Team Member Reprimand Report, Team Member Suspension Report, or Team Member Termination Report was issued based on the allegations in this customer complaint, but following a reasonable inquiry to date, White Castle admits that it has located no Team Member Reprimand Reports, Team Member Suspension Reports, and Team Member Termination Reports based on the actions alleged in this customer complaint.

Dated: June 24, 2014          Respectfully submitted,

s/ Jonathan M. Linas
E. Michael Rossman (admitted *pro hac vice*)
emrossman@JonesDay.com
JONES DAY
325 John H. McConnell Boulevard, Suite 600
P.O. Box 165017
Columbus, Ohio 43216-5017
(614) 469-3939
(614) 461-4198 (fax)

Jonathan M. Linas (IL No. 6290055)
jlinas@jonesday.com
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601-1692
(312) 782-3939
(312) 782-8585 (fax)

Attorneys for Defendant
White Castle System, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 24, 2014, I mailed Defendant's Responses to Plaintiff's First

Request for Admission by UPS overnight and email to:

John C. Ireland
THE LAW OFFICE OF JOHN C. IRELAND
636 Spruce Street
South Elgin, IL  60177

s/ Jonathan M. Linas
One of the Attorneys for Defendant